738 So.2d 672 (1999)
STATE of Louisiana
v.
Anthony WOOTEN.
No. 99-KA-181.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
*674 Paul D. Connick, District Attorney, Terry M. Boudreaux, Assistant D.A., Thomas J. Butler, Assistant D.A., Gretna, for Plaintiff-Appellee.
Laurie A. White, Louisiana Appellate Project, New Orleans, For Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Anthony Wooten, with simple burglary in violation of LSA-R.S. 14:62. The matter proceeded to trial before a six person jury. After considering the evidence presented, the jury returned a verdict of guilty as charged. As a result of this conviction, the court sentenced the defendant to serve twelve years at hard labor, with credit for time served. The defendant now appeals.

FACTS
At 10:00 on the night of April 2, 1997, Tina Warren and her roommate Barbara Cutrer were at their house on Clearview Parkway in Metairie. Their backyard abuts the rear of Lagoda Air Conditioning, a business owned by their landlord, Larry Bolner. Ms. Warren let her dog into her yard, as was her practice at that time every evening. Her suspicion was aroused when the dog immediately began to bark, so she went outside to investigate. The dog ran across the yard to where two Lagoda company vans were parked. When Ms. Warren approached the vans, she saw the defendant who was wearing a Lagoda company tee shirt. Although he told Ms. Warren that he worked there, she found it unusual for anyone to be at the business at that time. Ms. Warren went inside and told Ms. Cutrer to call the police. Ms. Cutrer first telephoned Larry Bolner, then notified police. Larry Bolner told her that he believed the man Ms. Warren had spotted was an employee he had fired that morning. While Ms. Cutrer was on the telephone, Ms. Warren went next door to the home of Danny Bolner, Larry Bolner's brother. Ms. Warren and Danny Bolner walked back to Lagoda, where they found the defendant getting into a white four-door car. The car's back seat was full of items Danny Bolner recognized as belonging to his brother's business. By this time Ms. Cutrer had gone outside, and recognized the defendant as a Lagoda employee whom she had seen on company property earlier that week.
Danny Bolner asked the defendant what he was doing, to which he replied that he was retrieving his tools. The defendant then drove away from the premises. Within minutes, Jefferson Parish sheriffs deputies arrived, followed by Larry Bolner and his wife, Mary. Ms. Warren gave officers the defendant's license plate number, and the witnesses supplied them with a physical description. Larry Bolner inspected the premises, and found several pieces of equipment missing from the shop *675 and the vans. He estimated the total value of that property to be between six and seven thousand dollars. The testimony at trial showed that there were no signs of forced entry, although the van doors were found unlocked.[1]
Larry Bolner testified that the defendant had worked for Lagoda for only five days, and had been fired that morning for poor work performance. Mrs. Bolner, Lagoda's office manager, testified that she retrieved the defendant's employee file and showed it to officers. Included in the file was a photocopy of the defendant's driver's license. When Ms. Warren, Ms. Cutrer, and Danny Bolner saw the copy, they informed the deputies that this was the man they had seen on the property.
The defendant's address was included in his employee file, but the Jefferson Parish deputies informed the victim that they could not pursue him because he lived in Orleans Parish, outside of their jurisdiction. Deputy Brian McClendon contacted the New Orleans Police Department and passed on information about the incident. Larry Bolner testified that he telephoned the defendant at his home that night, and confronted him about the incident. Mr. Bolner told the defendant that if he returned the stolen goods, he would not pursue criminal charges against him. Unsatisfied with the defendant's response, Larry Bolner decided to go to his house and recover the stolen items himself. Ms. Warren, Ms. Cutrer, and Mrs. Bolner accompanied him.
The group arrived at the defendant's residence in New Orleans East, but waited in their car until New Orleans police officers arrived. Upon their arrival, the officers knocked on the door and were allowed inside by the defendant's wife. They found the defendant in a bathroom in the rear of the house and placed him under arrest. The officers also searched the premises after obtaining the defendant's consent; however, they did not find any of the property alleged to have been stolen. When the officers exited the house with the defendant, Ms. Cutrer and Ms. Warren identified him as the man they had seen at Lagoda that night. The defendant was transported to New Orleans Central Lockup, and was picked up there by Jefferson Parish deputies.

SUFFICIENCY OF THE EVIDENCE
In his first assigned error, the defendant challenges the sufficiency of the evidence used to convict him. He specifically complains that the state failed to prove beyond a reasonable doubt that he burglarized Lagoda's vans or shop, as there was no evidence of unauthorized entry.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test from the standard set forth in Jackson, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. Tran, 97-640 (La. App. 5 Cir. 3/11/98), 709 So.2d 311.
In the present case, the defendant was convicted of simple burglary. That offense is defined in LSA-R.S. 14:62 as "the unauthorized *676 entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein." State v. Taylor, 97-0461 (La.App. 4 Cir. 7/29/98), 719 So.2d 75. The defendant asserts that the state failed to prove the entry element because none of the witnesses testified to having seen him enter the vans or the shop.
In the present case, we have reviewed the evidence and find it to be sufficient to sustain the defendant's conviction for simple burglary. There was testimony that placed the defendant, at 10:00 p.m., next to the Lagoda company vans, which were parked behind the business. Further, there was testimony that the defendant was not authorized to be on the grounds, as he had been fired earlier that day. In addition, both Mr. and Mrs. Bolner testified that the vans and the building were always kept locked when they were not at the office. Mrs. Bolner specifically testified that she locked the business before leaving on the evening of April 2, 1997. When the Bolners arrived at the scene, they found both the vans unlocked, although the testimony was unclear as to whether the shop was found unlocked. Larry Bolner testified as to the items which he discovered missing from the shop and the vans, and Danny Bolner testified that the defendant's car was filled with the type of equipment that his brother used in his business. Larry Bolner also testified that he had no other employees during the short time that the defendant worked for him and further that the defendant had been given keys to the vans and the shop during his employment, but he had returned them upon his termination.
Although the stolen property was never recovered, and although no one testified to having seen the defendant inside the shop or the vans, we find, from the circumstantial evidence presented, that a reasonable juror could have inferred that the defendant entered the vans and the shop without authorization from the owners with the intent to commit a felony or theft therein.
In this assignment, the defendant further argues that alibi testimony presented at trial showed that he was at home at the time of the alleged burglary and thus, the evidence could not have supported a finding of guilty. We recognize that the defendant presented alibi testimony; however, this alibi testimony was contradicted by the testimony of the state's witnesses who testified that they saw the defendant on Lagoda property at 10:00 p.m. on April 2, 1997. The jury apparently found the testimony of the state's witnesses more credible than that of the defendant's alibi witnesses, one of whom was the defendant's wife. Where there is conflicting testimony as to factual matters, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be reweighed on appeal. State v. Richards, 97-1182 (La.App. 5 Cir. 4/15/98), 713 So.2d 514, writ denied, 98-1452 (La.10/9/98), 726 So.2d 27.
Based on the foregoing, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt, that the defendant committed the offense of simple burglary. Accordingly, we reject the arguments raised by the defendant in this assignment of error.

MOTION TO SUPPRESS IDENTIFICATION
In his second assigned error, the defendant challenges the trial court's denial of his motion to suppress identification. In the present case, defense counsel filed a motion seeking to suppress the identification of the defendant which was made by the witnesses after being presented with his driver's license picture. Following a hearing, the trial judge denied the defendant's motion. The defendant now complains that this ruling was in error because *677 the identification procedure used was impermissibly suggestive and in violation of his due process rights.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. A defendant challenging an identification must prove that it was suggestive. LSA-C.Cr.P. art. 703 D. Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process. State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98), 708 So.2d 1099, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415.
The factors to be considered in assessing reliability include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty displayed at the confrontation and the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
In the present case, we find that the defendant failed to prove that the identification procedure was suggestive. At the suppression hearing, Deputy McClendon testified that when Larry Bolner arrived at the scene, witnesses gave him a description of the perpetrator. Based on that information, Bolner surmised that the perpetrator was an employee whom he had fired earlier that day. According to McClendon, Mr. Bolner retrieved a file in order to access the employee's telephone number. There was a photocopy of the defendant's driver's license in the file, and the witnesses saw it and identified the defendant as the man they had seen. McClendon stated he did not personally show the witnesses any photograph.
At trial, Deputy McClendon again testified that Larry Bolner retrieved the defendant's employee file, and the witnesses saw the copy of his driver's license inside the file and identified him as the perpetrator. According to the officer, Danny Bolner and Tina Warren were positive in their identifications.
Danny Bolner testified that it was Mary Bolner who retrieved the employee file, and that it was she who had the photocopy of the defendant's driver's license. He stated that when he saw the picture, he said, "That's the guy." Larry Bolner himself testified that it was his wife who found the file, and that when she opened the file, Tina Warren and Danny Bolner saw the photocopy and immediately identified the defendant as the man they had seen on the property. Barbara Cutrer also testified that she identified the defendant from the photocopied picture as the man she had seen. Ms. Cutrer recognized the defendant from having seen him earlier that week as he reported for work at Lagoda.
Mary Bolner testified that she opened the file and showed McClendon the photocopy, and that Tina Warren and Danny Bolner saw it and said, "That's the guy." According to Tina Warren, Mary Bolner brought the file from the office and showed it to the officer. The officer then asked Ms. Warren whether the man in the picture was the man she had seen. Ms. Warren responded that he was.
Based on this testimony by Ms. Warren, the defendant argues that the officer influenced the witnesses to identify him as the perpetrator. We have reviewed the entirety of the testimony and find that the identification procedure was not impermissibly suggestive. The testimony showed that this was not a formal identification procedure conducted by a police officer but rather the identifications were made spontaneously. Either Mr. or Mrs. Bolner opened the file, and the witnesses appear to have seen the photocopy inadvertently. Moreover, even if the police officer had some involvement in this process, there *678 was little likelihood of misidentification. The witnesses had a good opportunity to view the defendant at Lagoda, and Ms. Cutrer had seen the defendant on previous occasions. The witnesses all stated they were certain as to their identifications.
In addition to the photographic identifications, Ms. Cutrer and Ms. Warren made face-to-face identifications of the defendant at his house at the time of his arrest, only two hours after the incident. The two women, along with Danny Bolner, also identified the defendant in court.
While we acknowledge that single photograph identifications are generally viewed with suspicion,[2] we find that the identifications made by the state's witnesses in the present case were not impermissibly suggestive, and in fact, were reliable. Accordingly, we find that the trial judge did not err in denying the defendant's motion to suppress the identification.

EVIDENTIARY RULINGS
In his third assigned error, the defendant argues that the trial court denied him his right to a fair trial and to present a defense by refusing to allow defense counsel to use a photocopied document to refresh the memory of a witness and by refusing to allow defense counsel to use a map in examining a witness and in closing argument.
The defendant first complains that the trial court erred in excluding a photocopy of a personal check which he intended to use to refresh the memory of a defense witness. Joseph Mire testified that the defendant was at his bar to fix an ice machine and that he paid the defendant by check that day. When Mr. Mire could not recall the date on which these events occurred, defense counsel requested that he be allowed to show a photocopy of the check to Mire to refresh his memory as to the date. The court denied counsel's request, reasoning, "That's not the best evidence. The best evidence is the original."
LSA-C.E. art. 612 B provides, in pertinent part: "In a criminal case, any writing, recording, or object may be used by a witness to refresh his memory while testifying." Furthermore, LSA-C.E. art. 1003 provides, in pertinent part:
"A duplicate is admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original;(2) In the circumstances it would be unfair to admit the duplicate in lieu of the original"
In the present case, we find that the trial judge erred in refusing to allow defense counsel to use the photocopy of the check; however, we find such error to be harmless given that the testimony the defendant sought to elicit would not have helped his defense. The defendant characterized Mr. Mire as an alibi witness whose testimony was crucial to proving he was not at the scene of the crime. However, Mr. Mire could only account for the defendant's whereabouts until 8:15 or 8:30 p.m. The state's witnesses testified that the defendant was on Lagoda property at 10:00 p.m. Therefore, the use of the photocopy to refresh Mr. Mire's memory as to the date on which the defendant worked for him would have had little, if any, impact on the outcome of the case.
The defendant further complains that the trial court erred in barring counsel from using a map of the New Orleans metropolitan area in cross-examining state witness Larry Bolner. Counsel asked Mr. Bolner to mark on the map the locations of his business and the defendant's home in New Orleans East, and the witness complied. Counsel's purpose was apparently to show how far the defendant would have had to travel in order to get from Lagoda to his home. Counsel asked the court's permission to display the map for the jury. During a bench conference, the judge denied *679 counsel's request, commenting, "You were about to testify, and you were showing the exhibit to the jury ..." The court further told counsel, "You can't do a demonstration. It has to be a question and answer between you and the witness. I can't allow you to go back and recant by your own demonstration." The judge's comments indicate that he was not so much concerned that counsel used the map, but rather that counsel was attempting to "testify" rather than ask questions of the witness. Although it is not readily apparent from the record that this was counsel's intention, the trial judge was in the best position to assess counsel's actions. The defendant does not offer any legal authority to support his argument, nor does he say how he was prejudiced by the court's ruling. Accordingly, we find no error by the trial judge in his ruling.
The defendant also states that the trial court prevented counsel from using the map to illustrate his closing argument. The record does not contain a transcript of the closing arguments, and there is nothing, therefore, for this court to review. Based on the foregoing discussion, we find no merit to the arguments raised by the defendant in this assignment of error.

ERRORS PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSC.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals no errors patent.
For the reasons set forth herein, we hereby affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The testimony was unclear as to the status of the shop doors.
[2] Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); State v. Harper, 93-2682 (La.11/30/94), 646 So.2d 338.