| ^GOTHARD, Judge.
Defendant, Danny Jones, appeals his conviction of theft of an amount over $100.00 in violation of LSA 14:67, and sentence as a multiple offender. For reasons that follow, we affirm the conviction, set aside the adjudication as a multiple offender and enhanced sentence, and remand.
On February 1, 1999, the Jefferson Parish District Attorney filed a bill of information charging defendant, Danny Jones, with one count of theft of U.S. Currency, valued at $231.97, from Custom Bus Charter, Inc.,(Custom) in violation of LSA R.S. 14:67. Defendant was arraigned, on February 17, 1999, at which time he pled not *564 guilty. The case was tried on July 27, 1999 before a six-person jury, which unanimously found defendant guilty as charged. On September 9, 1999, the State filed a multiple offender bill of information, and defendant denied the allegations. Defendant stipulated to the multiple bill on September 16, 1999, and defendant was found to be a [¡¡second felony offender pursuant to LSA R.S.15:529.1. On September 16, 1999, the trial judge sentenced defendant to imprisonment at hard labor for a term of two years without benefit of probation or suspension of sentence, and he ordered the sentence to run consecutively with the sentence defendant had previously received in drug court. Defendant appeals.

FACTS

The State presented evidence at trial to show that defendant, while working at Custom, took a check in the amount of $231.97 made payable to a co-worker, Louis J. McMillion, from the dispatcher’s desk drawer, and cashed the check at Evergreen Grocery Store (Evergreen). The defense presented evidence to show that defendant did not take, nor cash, the check.
Louis McMillion testified for the State that he was employed part-time with Custom between December 14th and 28th, 1998. He would always get his payroll check from the dispatcher. The dispatcher would retrieve the checks from the desk drawer in the dispatcher’s office. McMil-lion did not recall whether the dispatcher had to unlock the drawer to get the check. Because McMillion only worked part-time, he did not know many of the Custom employees. At some time between December 14th and 28th, 1998, he asked the dispatcher for his check. The dispatcher gave him a cheek, but McMillion did not look at it at that time. During his shift, McMillion looked at the check and realized that it was not his payroll check, but a reimbursement check for the CPNC, the license that he gets from the city in order to pick up passengers from the hotels.
When McMillion realized he did not have his payroll check, he called the dispatcher and asked him what had happened. When the dispatcher was | ¿unable to find the check, he told McMillion to call someone in accounting. The accounting department investigated the situation, and about a week later, they told McMillion that the check had been cashed. When McMillion informed the accounting department that he had not cashed the check, he was told to wait until the canceled check was returned. At that time it would be apparent if the check was endorsed and cashed.
The State showed McMillion a check from Custom made payable to him, dated December 14, 1998, in the amount of $231.97, which he identified as his payroll check. McMillion looked at the signature on the back of the check and testified that it was his name, but not his signature. McMillion stated that he had never gone to Evergreen and did not know where it was located. He usually cashed his check at Bank One where he has had an account for many years. McMillion further testified he never gave defendant or anyone else permission to take his check and cash it, nor did he give defendant or anyone else permission to sign his name on the back of the check. McMillion did not know whether defendant had access to the dispatcher’s desk drawer.
Edward Johnson testified that he had been employed by Custom for approximately two years, and was employed on December 14, 1998, as Director of Operations. He was notified at some point that McMillion was missing his payroll check. Johnson contacted someone at the bank who told him that the check had been cashed at Evergreen. Johnson went to the Evergreen and spoke to Mr. Saber, who told Johnson that his (Saber’s) endorsement was on the back of the check. Saber told Johnson that he could get a photograph of the individual who cashed the check. Johnson obtained 15the photograph from Evergreen about a week later. He *565 identified State’s exhibit number 1 as McMillion’s missing payroll check in the amount of $231.97. Johnson identified State’s exhibit number 2 as the photograph he picked up from Evergreen. He recognized the person in the photograph as defendant, a detailer for Custom who cleans the buses at night.
Johnson stated that it was possible that defendant could have been in the building where the check was left in the desk drawer. Defendant did not have access to that desk on a normal basis. The desk drawer was not locked, but the office was manned by the dispatcher or supervisor on duty. However, Johnson testified that he was not there at night, and there was a high possibility that “policy gets lax at night.” After Johnson discovered who cashed the check, he consulted his supervisors, and called the Jefferson Parish Sheriffs Office to report the incident. He gave Deputy Lynch the check and the photograph. At the top of State’s exhibit number 2, there is a photograph of the check and at the bottom there is a photograph of defendant, which were taken at Evergreen. The check number in the photograph in State’s exhibit number 2 is 27142, which is the same check and check number as State’s exhibit number 1. The check belonged to McMillion, and not to defendant.
On cross-examination, Johnson testified that the dispatcher sits in a room with two work stations. The checks are in a drawer on one side, and the dispatch radio and telephones are on the other side. If the dispatcher was on the side of the room with the radio and telephones with his back to the door, he would not have heard someone come through the door if the door was open. If someone opened the door and then came through, the |fidispatcher would have heard him. Sometimes the door is open all the time. The desk drawer was closed, but it was not locked. Johnson stated that it was possible that someone could have entered the room where the dispatcher was and gotten the check from the drawer without the dispatcher seeing him. The same dispatcher worked when defendant worked. Defendant was not the only detailer who worked at night; there were about four or five others. No dispatcher ever told Johnson that defendant entered the room and went into the desk drawer. There were no fingerprints lifted from the desk drawer. During the daytime, the three regular dispatchers and Johnson had access to the desk drawer. There was more than one person who could have gone into the desk drawer. On redirect, Johnson testified that there are no dispatchers, detailers, or any other employees in the photograph with the check. Johnson also stated that the dispatchers work nine-hour shifts. When they go to the bathroom, no one is in the room with the desk where the checks are kept.
Deputy Dennis Lynch of the Jefferson Parish Sheriffs Office testified for the State that he responded to a call from Custom in December of 1998. Based on the complaint, the check, the photograph, and the fact that Custom wanted to press charges, Deputy Lynch found probable cause to arrest defendant. Deputy Lynch completed the report and was advised that defendant was scheduled to come into work at Custom at about 10:30 p.m. to 11:00 p.m. Deputy Lynch went to Custom to arrest defendant, but he never showed up. Deputy Lynch’s marked unit was outside at Custom while he was waiting for defendant. On cross-examination, Deputy Lynch stated |7that he had no records to verify whether or not defendant had called in earlier that day to say he was ill.
Lieutenant Michael Ling of the Jefferson Parish Sheriffs Office testified that he arrested defendant on January 14, 1999 at his apartment, advised him of his constitutional rights, and charged him with theft. On cross-examination, Lieutenant Ling stated that defendant did not give him any problems when he went to arrest him and that defendant went with him willingly.
Saber Afaneh testified that he works at Evergreen in New Orleans, and that he *566 worked there in December of 1998 as a cashier. He looked at the check marked as State’s exhibit number 1 and identified his initials on the cheek, which meant that he cashed that check. When someone gives him a check to cash, he usually asks to see the driver’s license or identification card. If he knows the customer, sometimes he cashes the check without identification. Afaneh testified that defendant periodically came into the store and cashed checks and, therefore, he would be the type of person he might cash a check for without a driver’s license. Afaneh took defendant’s picture with the check in December of 1998. The number on the check in the picture matched the number on the original check. There was not a picture of a driver’s license; therefore, he cashed the check without identification. The number in the middle of the original check, 019997, matched the number in the picture. He would never take a picture of someone with someone else’s check. When he finished cashing a check, he immediately put it in the cash register. To print out the picture, he called |Rthe clerk and gave him the number for the picture, the amount, and the business name, and the clerk sent him the picture in the mail.
On cross-examination, Afaneh stated that the store was usually busy and cashed about $18,000.00 worth of checks each month. He only cashed checks for one person at a time. On that particular day, Mike Judeh, Afaneh’s cousin, cashed checks. When defendant came into the store to cash checks, Afaneh did not generally verify that it was the same name on the check that he always brought in to cash.
George Johnson testified for the defense that he used to go to Evergreen to cash his checks, but he did not go to Evergreen anymore because they mixed up the checks and were very busy. He recalled an incident in which an Evergreen employee snapped someone else’s picture along with Johnson’s check. Johnson gave the cashier his check, and then walked away from the counter to get some merchandise, and when he returned, they had snapped someone else’s picture and were about to give the other person Johnson’s money. Johnson also stated he was overcharged for cashing his check on one occasion. When he caught the mistake, Johnson reported it, and it was corrected. Johnson further testified he has had problems communicating with the people who work at Evergreen.
On cross-examination, Johnson testified that he had known defendant all of his life. They grew up together playing little league football and lived in the same neighborhood. They were good friends, and Johnson was in defendant’s wedding. He stated that he did not want anyone to get into trouble. On redirect, Johnson testified that he and defendant were not best friends, and that he had not seen defendant very much since he got married.
| ^Defendant, Danny Jones, testified that he was working at Carriere Roofing Company, but was temporarily laid off because of his legal problems. He completed high school at O. Perry Walker in Algiers in 1987. After he graduated, he went to New York for about three months to live with his uncle and attend school. It did not work out, so he came home and joined the Army in 1990. He received' various ribbons and medals and was honorably discharged in 1993. He was married on June 6, 1998.
Defendant admitted a prior conviction on a drug charge, but maintained his innocence. He claimed that he associated with the wrong crowd around his house. The crowd was involved in drug activities. He stated that the police came, and he went to jail on a drug charge because he was in the wrong place at the wrong time. Defendant entered a plea of guilty because the public defender said it was his first offense and, if he pleaded guilty, he would only get probation. Defendant testified that he did not have a drug problem.
*567 Defendant started working at Custom in September of 1997. He worked there for almost a year. Defendant worked the 10:30 p.m. to 7:00 a.m. shift for the duration of his employment with Custom. He was commended for doing a good job, and has never been reprimanded. He denied having access to the desk drawer in the dispatcher’s office. He stated that the other ten detailers were not allowed to go in the dispatcher’s office, because there was no reason for the detailers to go in there. The other detailers went into the dispatcher’s office all the time, but he did not. He has been in there on a few occasions with his supervisor, L.C. Bacchus. He went to Evergreen to cash his |incheck on the date in question. He brought his check to the counter to be cashed, and they snapped his picture. Defendant always presented his identification to the cashier at Evergreen. On many occasions, however, the clerk cashed his check without identification. Defendant claimed that the clerk at Evergreen took his picture with someone else’s check on the date in question. Defendant stated that a lot of people from Custom cash their cheeks at Evergreen. He denied taking the check out of the desk drawer, and stated that he and his wife were not “hurting for money.”
On cross-examination, defendant stated that he pleaded guilty to possession of cocaine with intent to distribute in August of 1998, three months before the present incident occurred. He claimed that he did not have a drug problem in August of 1998, and that he has never had a drug problem. Defendant denied he had to complete a drug rehabilitation program and seek drug screening, even though court documents indicate that in August of 1998, the judge ordered him to successfully complete such a program and to seek drug screening as directed by the probation officer. However, defendant admitted that he signed the bottom of the paper which indicates those requirements. His initials appear next to all of the conditions of probation on the court document. He received a five year suspended sentence and three years of active probation for the crime of possession with intent to distribute cocaine'. He knew that if he got convicted of another crime, he would go to jail for five years. Defendant testified that he did not cash McMillion’s check and that he was not lying to the jury.
In his only assignment of error, defendant argues that the evidence was insufficient to support his conviction. He contends that it was possible In that his picture and/or check was mixed up with the picture and/or check of another worker from Custom. The State maintains that the evidence presented at trial was sufficient to warrant a conviction.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). In Jackson, the court held that due process requires the reviewing court to determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
In this case, defendant was charged with and convicted of theft of U.S. Currency valued at $231.97, a violation of LSA R.S. 14:67, which provides in pertinent part:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. ..
*568 In order for the defendant’s conviction to be upheld on appeal, the State must have proven the following essential ■ elements beyond a reasonable doubt: (1) that the defendant misappropriated or took; (2) a thing of value; (3) that belonged to another; and (4) that the defendant had the intent to deprive the owner permanently of that which was misappropriated or taken. State v. Monterroso, 96-376 (La.App. 5 Cir.11/14/96), 685 So.2d 249, 251, citing State v. Pittman, 368 So.2d 708 (La.1979) and State in Interest of K.W., 93-716 (La.App. 5 Cir. 2/9/94), 632 So.2d 5.
Specific intent is a state of mind and need not be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982). When circumstantial evidence is used to prove the commission of the offense, LSA R.S. 15:438 provides that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/24/00), 753 So.2d 208. Ultimately, evidence both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141. L.Ed.2d 722 (1998).
After hearing the testimony and evaluating the credibility of the witnesses, the jury apparently believed the State’s witnesses and found defendant guilty of theft between $100.00 and $500.00. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052.
Based on a review of the record and the law, we find that the evidence at trial was sufficient under the Jackson standard to support defendant’s conviction. This assignment is without merit.
|13We have reviewed the record for errors patent and have found the following error. Defendant stipulated to the multiple offender bill of information; however, the court did not advise defendant of his rights pursuant to LSA R.S. 15:529.1D before it did so. In State v. Monterroso, 96-376 (La.App. 5 Cir. 11/14/96), 685 So.2d 249, 252-253, the defendant pled guilty to the multiple offender bill of information without being advised of his rights pursuant to LSA R.S. 15:529.1D. In that case we stated:
In State v. Johnson, 432 So.2d 815 (La.1983), writ granted, 438 So.2d 1113 (La.1983), appeal after remand, 457 So.2d 1251 (La.App. 1 Cir.1984), appeal after remand, 471 So.2d 1041 (La.App. 1 Cir.1985), the Louisiana Supreme Court discussed the requirements of LSA R.S. 15:529.1D, stating as follows:
This section of the statute clearly recognizes that the defendant, if he chooses, has the right to remain silent. Once the defendant chooses to remain silent the state must then by competent evidence prove the elements of R.S. 15:529.1 before the defendant can be sentenced as an habitual offender. Before the defendant chooses to acknowledge or confess in open court that he has been previously convicted of a felony, the statute requires that he first be cautioned by the trial court as to his rights. R.S. 15:529.1(D) specifically provides that defendant be advised by the court of his right to a “formal hearing” and to have the state prove its case. State v. Martin, 427 So.2d 1182 (La.1983). Further, this section implicitly provides that the defendant should be advised, by the court, of his statutory right to remain silent.
The record before us does not contain any showing that defendant was advised *569 of his right to a formal hearing and his right to have the state prove its case under the multiple offender statute; nor does it show that defendant was informed of his right to remain silent. Such failure to advise defendant of these rights constitutes reversible error. See State v. McIntyre, 496 So.2d 1204 (La.App. 5 Cir.1986); State v. Harris, 612 So.2d 280 (La.App. 5 Cir.1992). However, defendant may be tried again on the multiple offender bill, since double jeopardy does not attach to multiple offender hearings. State v. Johnson, supra; State v. Harris, supra.
State v. Monterroso, supra, 685 So.2d at 252-253.
|14In the instant case, defendant stipulated to the multiple offender bill of information, but the court failed to advise him of his rights pursuant to LSA R.S. 15:529.1D. Based on the above-cited case law, such failure to advise defendant of these rights constitutes reversible error. Therefore, we set aside defendant’s adjudication as a multiple offender, as well as defendant’s sentence as a multiple offender, and remand the case to the trial court for resentencing, in accordance with the above cited law.
CONVICTION AFFIRMED; ADJUDICATION AS MULTIPLE OFFENDER AND ENHANCED SENTENCE SET ASIDE; MATTER REMANDED.