5 So.3d 891 (2009)
STATE of Louisiana
v.
Will H. SPARKMAN.
No. 2008-KA-0472.
Court of Appeal of Louisiana, Fourth Circuit.
January 28, 2009.
*892 Keva Landrum-Johnson, District Attorney of Orleans Parish, Alyson Graugnard, Assistant District Attorney of Orleans Parish, New Orleans, LA, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, Judge ROLAND L. BELSOME).
JAMES F. McKAY, III, Judge.
On January 23, 2007, the appellant was charged by bill of information with one count of violating La. R.S. 14:62, relative to simple burglary. He entered a not guilty plea at his arraignment on January 29, 2007. On March 13, 2007, a six person jury returned a verdict of guilty as charged. On October 29, 2007, the appellant was found to be a second felony offender and sentenced to six years in the custody of the Louisiana Department of Corrections, with credit for time served.

STATEMENT OF FACT
Prior to Hurricane Katrina, Ethel Bell, the victim, resided for about twenty years at 2105 Fourth Street. The property was owned by her father Willie Williams and his wife Julie Williams (Ms. Bell's step-mother). The defendant is the grandson of Julie Williams. This home is a double with two municipal addresses, 2105 and 2107 Fourth Street. As a result of Hurricane Katrina, Ms. Bell was forced to vacate the residence, leaving most of her possessions behind. The home was not damaged by the hurricane. In October of 2006, Ms. Bell returned to her residence to find that it had been ransacked. At trial, the State called three witnesses to the stand, Ms. Clara Jackson, Ms. Ethel Bell, and Ms. Doris Bryer.
Ms. Clara Jackson was the first witness. She testified that her mother, Ethel Bell, lived at 2105 Fourth Street in New Orleans prior to Hurricane Katrina. At the time of the burglary, no one actually lived in the house; it had been empty since the hurricane. The witness testified that she visited the house at least every other day to check up on it. On the Friday before the burglary she had checked the residence and did not notice any damage. She could not remember the exact date when she noticed that something was out of the ordinary, only that it was a Sunday. On that day she noticed that the windows were broken in the back of the house, the air conditioner had been pushed in, and there was glass everywhere. She saw a cedar robe that was broken into, the lock was broken and it was empty. She testified that the cedar robe contained jewelry and other "nice things."
Ms. Jackson identified the appellant as a person whose "grandmother had married her grandfather," and was the person that she saw "just standing outside" in front of the house at 2105 Fourth Street on the *893 Sunday evening to which she referred earlier. She also recollected that there was a garbage bag sitting in front of the steps of the house. The witness said that she called to appellant, saying "someone has broken into Ethel's house," and the appellant replied, "Oh, maybe someone just broke into it to see what they could find." She never saw the contents of the garbage bag.
On cross examination, the witness told the jury that she never saw appellant take anything and that appellant never said that he took anything from the house. Ms. Jackson confirmed that her grandfather, Willie Williams, and appellant's grandmother, Julie Williams, were married. She also admitted that she had no idea who was the legal owner of the house.
Ms. Ethel Bell, the second witness, testified that she has lived in Gloster, Mississippi since the storm. She lived at 2105 Fourth Street before Katrina for twenty years. She admitted that she did not own the house; rather, it was her father's house (Willie Williams), describing it as a double with 2107 Fourth Street. When she moved to Mississippi, she locked the house. The building was not flooded, but sustained wind damage. She testified that her neighbor Ms. Bryer had contacted her sometime in October of 2006, to let her know that something was wrong with the house. She returned to find the window air conditioner at the back of the house pushed in, and the room ransacked. The doors to her cedar robe were broken in, and the lock to her cedar chest at the foot of her bed was broken. She reported missing jewelry, two men's watches rings and bracelets. All of her sheets except one were gone; they were kept in the chest of drawers.
She identified the appellant as her father's wife's grandson, and she testified that appellant had never been given permission to go into the house.
On cross examination, Ms. Bell admitted that she did not see who pushed in the air conditioner or broke the locks on her furniture. When asked if she paid a mortgage note on the house, the witness answered "no". She also admitted that the owners were the grandparents of the appellant who are both deceased, and that to her knowledge, succession proceedings had never been started.
Doris Bryer, the state's third and final witness, testified that she lives at 2103 Fourth Street, next to 2105 Fourth Street. She returned to her home in November of 2005 and was aware that Ms. Bell had not returned to her home. When asked on direct examination whether she had ever seen anyone enter the 2105 property other than the prior witnesses, she identified the appellant. She said that she met the appellant on a Thursday when "he came to me and knocked on my door, and told me that he was living there." She and her daughter had come to do some cleaning that evening, and as she and her daughter got inside, he knocked on the door and said "I am staying next door." She responded, "Well, what does that have to do with me?" The witness saw the appellant later that evening; she heard a noise in the alleyway and saw the appellant in the alley with a bicycle.
On that Friday morning, as she came out of her house and climbed into her truck, the appellant went over to "speak" to her "and I saw him put three bags across the street." The bags that he was carrying "looked like a trash bag, white trash bag." When asked if she could tell what was in the bags, the witness answered "no," "they looked full and kind of bulky". Then he got onto a bicycle and left. The bags were gone by that evening. She did not see who removed them. She *894 never saw the appellant break anything, but she did see him remove and then repair the handle on the door.
Under re-cross examination, the witness admitted that she did not keep the 2105 house under constant surveillance and did not actually live continuously at her own house. "I was living in it sometimes. I would spend maybe the weekend, sometimes during the week.... I never stayed the whole week".
The state presented no other witnesses and rested its case.

ERRORS PATENT
There are no errors patent.

DISCUSSION
The appellant argues that the trial court erred in denying his motion for post verdict judgment of acquittal upon the insufficiency of the evidence to support his conviction and his motion for a new trial pursuant to La.C.Cr. Pro. art. 851(1).
The Louisiana Code of Criminal Procedure does not provide for the mechanism of a motion for judgment notwithstanding the verdict. As to the denial of defendant's motion for new trial, the stated grounds for the motion pursuant to La. C.Cr.P. art. 851(1) and (5) was that the verdict was contrary to the law and evidence and that the ends of justice would be served by the granting of a new trial. In State v. Snyder, 98-1078, p. 37, n. 21 (La.4/14/99), 750 So.2d 832, 859, n. 21, cert. granted, judgment vacated on other grounds, Snyder v. Louisiana, 545 U.S. 1137, 125 S.Ct. 2956, 162 L.Ed.2d 884 (2005), the court stated:
The denial of a motion for new trial based upon La.C.Cr.P. art. 851(1) is not subject to review on appeal. State v. Skelton, 340 So.2d 256, 259 (La.1976) ("[W]e have uniformly held that a bill of exceptions reserved to the refusal of the trial judge to grant a motion for a new trial based on Article 851(1), relative to sufficiency of the evidence presents nothing for our review.") (citations omitted); State v. Bartley, 329 So.2d 431, 433 (La.1976) ("It is well established in Louisiana that an assignment of error reserved to the denial of a motion for a new trial alleging that the verdict is contrary to the law and the evidence presents nothing for appellate review.") (citations omitted).
Snyder, 98-1078, p. 37, n. 21, 750 So.2d at 859, n. 21. See also. State v. Huckabay, XXXX-XXXX, p. 31 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1110-1111.
The appellant alleges that the evidence presented at trial was insufficient to uphold the conviction, thus rendering the verdict contrary to the law and evidence. Accordingly, insofar as the denial of defendant's motion for new trial based on the ground that the verdict was contrary to the law and evidence, this assignment of error presents nothing for review.
Mr. Sparkman asserts that the trial court erred in denying his motion for post verdict judgment of acquittal based upon the insufficiency of the evidence presented to sustain the conviction.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930. The rule as to circumstantial evidence is "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This is not a separate test from the Jackson standard, *895 but rather provides a helpful basis for determining the existence of reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Gibson, 43,146, p. 4 (La.App. 2 Cir. 3/19/08), 978 So.2d 1218 (citing State v. Pigford, 05-0477 (La.02/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165). Lastly, appellate courts do not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443
La.C.Cr.Pro. art. 821 provides for the motion for post judgment acquittal and states, in pertinent part:
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). 98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La. *896 App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
See also State v. Sykes, XXXX-XXXX, p. 7, (La.App. 4 Cir. 3/9/05), 900 So.2d 156.
In the instant matter the appellant was charged with simple burglary pursuant to La. R.S. 14:62, which in pertinent parts defines simple burglary as the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein.
There is no disagreement in the instant matter that Doris Bryer observed the appellant entering the house at 2105 Fourth Street. The dispute lies on whether his entry was unauthorized and whether the appellant had the intent to commit a felony or any theft therein.
Doris Bryer testified that she saw the appellant enter the house and that he admitted that he was living in the house. She also testified that she saw Mr. Sparkman exit the house with three garbage bags and placed the bulky bags across the street from the house. Ms. Bell testified that she never gave Mr. Sparkman permission to enter the house. The State presented three witnesses which the trier of fact concluded to be credible witnesses and established that the appellant had entered the house without authorization with the intent to commit a felony or theft thereby resulting in a simple burglary at 2105 Fourth.

CONCLUSION
In this matter, viewed in a light most favorable to the prosecution, any rational trier of fact, inferring from all of the circumstances, could have found beyond a reasonable doubt that Mr. Sparkman made an unauthorized entry into the house at 2105 Fourth Street with the intent to commit a theft. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
BELSOME J., dissents with reasons.
BELSOME, J., dissenting.
As the majority acknowledges, the evidence against Defendant in this case, a relative, is circumstantial. No witnesses observed Defendant break the rear window of the home, nor did any witness observe the contents of the bags. Moreover, Doris Bryer testified that Defendant not only came over and introduced himself, but also entered the home through the front door and repaired the door latch, behavior that is arguably inconsistent with a burglar. Thus it can be reasonably hypothesized that someone other than Defendant removed the property from the premises. Accordingly, this writer does not agree that the evidence in this case excludes every reasonable hypothesis of innocence, nor can this writer agree that the elements of the offense of simple burglary were met under these particular facts. See La. R.S. 15:438; State v. Bullard, 29,662, p. 4 (La.App. 2 Cir. 9/24/97), 700 So. 2d 1051, 1053. I must respectfully dissent.