STATE OF LOUISIANA

VERSUS

CHARLES E BATES

NO. 24-KA-14

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 23-3504, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

August 22, 2024

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Scott U. Schlegel, and Timothy S. Marcel

**AFFIRMED**
    **SUS**
    **MEJ**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
  Honorable Paul D. Connick, Jr.
  Juliet L. Clark
  Thomas J. Butler

COUNSEL FOR DEFENDANT/APPELLANT,
CHARLES E. BATES
  Holli A. Herrle-Castillo

**SCHLEGEL, J.**

Defendant, Charles E. Bates, appeals his conviction and sentence for illegal use of a weapon in violation of La. R.S. 14:94.  For the following reasons, defendant's conviction and sentence are affirmed.

*Procedural Background*

On July 25, 2023, the Jefferson Parish District Attorney filed a bill of information charging that on or about June 15, 2023, defendant illegally discharged a firearm in violation of La. R.S. 14:94(A)(B).  The bill provided that defendant "violated La. R.S. 14:94(A)(B) in that he did intentionally, or in a criminally negligent manner, discharge a firearm under circumstances where it was foreseeable that death or great bodily harm might result to a human being."  Defendant pled not guilty at his arraignment on August 14, 2023.

The case proceeded to a jury trial on November 27, 2023.  On that day, the six-person jury found defendant guilty as charged by a unanimous verdict.  Defense counsel waived sentencing delays, and defendant was sentenced to two years of home incarceration.  Defense counsel also filed a motion for appeal on that day.  The trial court granted the motion to appeal on November 28, 2023.

*Facts*

The State called two witnesses at the trial:  Jefferson Parish Sheriff's Office Deputies Eric Glorioso and Anthony Lisgo.  The State also introduced as exhibits:  portions of the 911 call; portions of Dep. Glorioso's body camera video; a gun, a projectile, a shell casing, and bullets that were inside the gun found at the scene; and photographs.

On June 15, 2023, the Jefferson Parish emergency operator received a 911 call from an apartment complex on Manhattan Blvd., which reported that a maintenance worker had heard an argument and shots coming from

one of the apartments. When asked how the maintenance worker knew this, the caller replied that the maintenance worker said he had heard the shots. The caller said that the maintenance worker did not specify how many shots he heard, but that it was the boyfriend and there was only a woman on the lease.

Dep. Glorioso, a nine-year employee of the JPSO, testified that he was dispatched in response to a 911 call from a maintenance worker at an apartment complex on Manhattan Blvd. who had heard an argument and shots fired from an apartment. When he arrived at the complex, Dep. Glorioso responded to the front office to gather more information about what had occurred. After learning where the shots had come from, the deputy proceeded towards the apartment. When he arrived, other deputies were already on scene speaking with defendant, who was coming down the stairs, wearing a white t-shirt "covered in blood" and acting aggressively. There was also a woman standing at the top of the stairwell, who was later identified as a friend of defendant, who was present during the incident. Dep. Glorioso testified that they then handcuffed defendant, advised him of his *Miranda* rights, and started talking with defendant about what was going on. According to Dep. Glorioso, all they knew at this point was that there was an argument at the apartment complex, that glass had been broken, and that a shot had been fired. The interaction was recorded on his body camera video, which was introduced into evidence and published in part to the jury.

Defendant explained on the body camera video that he and his girlfriend, who lived together, had been throwing things at each other during the argument, that he broke a window, but that there was nothing physical. His girlfriend left before the police arrived. He stated that he then started to pack up his things, and was going to leave with his dog. When defendant was asked whether there were guns in the apartment, he said that there were

and told the officers that they could find it on the second sofa by the door. And when defendant was asked about whether any of the guns were fired accidentally, he said no, but then backtracked and said that he was not sure and said he didn't even remember putting a gun in his hands. But after one of the deputies confronted him about the fact that they also found a projectile and a casing on the landing, defendant said that he did not hear anything go off, and that "none of us" shot the gun. The video shows that an officer asked defendant "who grabbed the gun?" Defendant responded: "Who grabbed it? It's mine. So I'm the one that grabbed it."

He reiterated on the video:

> What I explained to you earlier - I don't know what – how the gun went off. All I remember was – is when I picked up everything to walk out that was when we were still throwing stuff at each other. But not that I put my hand on the trigger . . .

Dep. Anthony Lisgo also responded to the scene and testified that as he approached the stairwell at the apartment complex, he encountered defendant, who was wearing a white t-shirt covered in blood. Dep. Lisgo also saw a green suitcase on the upstairs landing and a dog running around. Dep. Lisgo asked defendant, "Hey man, what happened?" But defendant just kept saying, "The glass upstairs, the glass."

Dep. Lisgo was able to determine that defendant had a cut on his forearm and had a lot of blood on him. Dep. Lisgo testified that he went upstairs and walked through the apartment to make sure no one else was injured. He did not observe the gun on this walk through, but saw that there was blood on the walls, holes in doors, and the apartment was in complete disarray. He said that another deputy was coming in behind him and noticed that a window in the landing was broken. They eventually found a projectile lodged in the floor of the balcony area and a shell casing in that same area.

Dep. Lisgo testified that he went back downstairs and said to defendant "Listen, man, we know there was a shooting. If there's a gun,

where would it be at?" Defendant told him it was on the second couch next to the door. So Dep. Lisgo went back upstairs to look for the gun. When he did not see a gun on the couch, he put his hand into the crease of the couch that defendant had identified and pulled out a loaded semi-automatic handgun. Because people were still on the scene, Dep. Lisgo secured the gun and made it safe.

Dep. Lisgo identified the spent shell casing, the projectile, the firearm with magazine, and the bullets that had been in the firearm. He also identified the live rounds that were removed from the magazine of the firearm. Dep. Lisgo also identified photographs taken at the scene. He testified that he saw what appeared to be blood on the gun.

Neither deputy spoke to either of the females at the scene. Nor did either woman testify at the trial. Defendant's roommate briefly appears at the top of the stairs on the body camera video.

*Law and Analysis*

In his sole assignment of error, defendant asserts that the evidence was insufficient to uphold the conviction, and specifically that the State failed to prove that he was the one who fired the gun. He avers that there was no eyewitness testimony presented at trial and that no one observed him with the gun or witnessed him discharge the gun. Defendant argues that although a projectile, casing, and gun were retrieved from the apartment, this circumstantial evidence did not establish that he was the person who fired the gun. Defendant argues that because the evidence was wholly circumstantial, the State was required to exclude every reasonable hypothesis of innocence, which it failed to do. He argues that his girlfriend or roommate could have easily shot the weapon, but neither gave a statement or testified at trial. Defendant avers that because the State presented

"essentially no evidence" that he was the shooter, the conviction must be reversed.

The State argues that defendant's statements taken together and the evidence recovered at the scene refute the asserted "unreasonable hypothesis of innocence" theory that one of the women could have been responsible for discharging the gun.

In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mickel*, 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, *writ denied*, 10-1357 (La. 1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. *State v. Gatson*, 21-156, 21-157 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1034, *citing State v. Jones*, 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. *Id.* The requirement that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to "the actual trier of fact's rational credibility calls, evidence weighing and inference drawing." *Id., citing State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 202, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297.

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which

the existence of the main fact can be inferred according to reason and common experience. *Id.* When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 mandates that "[A]ssuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test from the *Jackson* standard, but rather provides a helpful basis for determining the existence of reasonable doubt. *State v. Wooten*, 99-181 (La. App. 5 Cir. 6/1/99), 738 So.2d 672, 675, *writ denied*, 99-2057 (La. 1/14/00), 753 So.2d 208.

The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. *State v. Baham*, 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, *writ denied,* 15-40 (La. 3/24/16), 190 So.3d 1189. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *Id.*

Where there is conflicting testimony as to factual matters, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Reviewing courts will not re-weigh the credibility of witnesses on appeal. *Id.*, *citing State v. Bovie*, 95-474 (La. App. 5 Cir. 11/28/95), 665 So.2d 558, 560-61. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *Wooten*, 738 So.2d at 675.

La. R.S. 14:94(A) defines the offense of illegal use of a weapon in pertinent part as "the intentional or criminally negligent discharging of any firearm, . . . where it is foreseeable that it may result in death or great bodily

harm to a human being." Defendant does not dispute that the evidence presented at trial was constitutionally sufficient to establish that the firearm was negligently discharged such that it was foreseeable that it may result in death or great bodily harm to a human being as required by La. R.S. 14:94(A). Instead, defendant contends that the hypothesis that the gun was fired by either defendant's girlfriend or roommate is sufficiently reasonable that no rational juror could have found beyond a reasonable doubt that he was the offender.

We find that a rational trier of fact could have found that the evidence presented was sufficient to support defendant's conviction of illegal use of a weapon in violation of La. R.S. 14:94.

The deputies testified that defendant's shirt was covered in blood when they arrived, which was verified by the body camera video. Defendant admitted that he was fighting with his girlfriend, that they were throwing things around, and that he had punched a glass mirror, which caused him to cut himself. The deputies found physical evidence at the scene that an argument had occurred in the apartment. Further, the deputies found a projectile, spent casing, and damaged floor from a bullet in the balcony area. And the deputies found a gun with blood on it, stuffed in a sofa, exactly where defendant told them they would find it. Defendant even admitted that it was his gun but continued to deny that the gun had been fired during the argument by himself or anyone else, intentionally or accidentally.

Although defendant stated on the video camera that he did not remember shooting a gun and that neither he nor his girlfriend shot a gun, when viewed in the light most favorable to the prosecution, and considering all of the direct and circumstantial evidence adduced, the evidence was sufficient to convince a rational tried of fact that all of the elements of the crime were proven beyond a reasonable doubt.

*Errors Patent Discussion*

The Court reviewed the record for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). The review reveals no errors patent in this case.

*Decree*

Accordingly, defendant's conviction and sentence are affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 22, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-14

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
JULIET L. CLARK (APPELLEE)        THOMAS J. BUTLER (APPELLEE)        HOLLI A. HERRLE-CASTILLO
                                                                    (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053