STATE OF LOUISIANA

VERSUS

EMMETT GARRISON, IV AKA "LIL EMMET"

NO. 19-KA-62

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-654, DIVISION "E"
HONORABLE WILLIAM C. CREDO, III JUDGE PRO TEMPORE, JUDGE
PRESIDING

April 23, 2020

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Hans J. Liljeberg

**<u>CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH
INSTRUCTIONS</u>**
    **SJW**
    **JGG**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Terry M. Boudreaux
    Darren A. Allemand

COUNSEL FOR DEFENDANT/APPELLANT,
EMMETT GARRISON, IV AKA "LIL EMMET"
    Meghan H. Bitoun

**WINDHORST, J.**

Defendant, Emmett Garrison, appeals his convictions and sentences. For the reasons stated herein, we affirm defendant's convictions and sentences and remand with instructions.

**PROCEDURAL HISTORY**

On May 5, 2016, a Grand Jury for Jefferson Parish returned a true bill indicting defendant, Emmett Garrison IV a/k/a "Lil Emmett," and co-defendant, Corey Flag, with the second degree murder of Bruce Lutcher, in violation of La. R.S. 14:30.1. On May 6, 2016, defendant pled not guilty.

On September 1, 2016, defendant and co-defendant Flag were charged in a superseding ten-count indictment. Defendant was charged in eight of the ten counts as follows:

Count 1: second degree murder of Bruce Lutcher on or about November 23, 2015, in violation of La. R.S. 14:30.1;

Count 2: conspiracy to commit armed robbery on or between November 23, 2015 and December 11, 2015, in violation of La. R.S. 14:26 and La. R.S. 14:64;

Count 3: attempted armed robbery with a firearm of Franklin Diaz on December 11, 2015, in violation of La. R.S. 14:27 and La. R.S. 14:64.3;

Count 5: attempted armed robbery with a firearm of Fausto Alvarez on December 11, 2015, in violation of La. R.S. 14:27 and La. R.S. 14:64.3;

Count 6: attempted second degree murder of Fausto Alvarez on December 11, 2015, in violation of La. R.S. 14:27 and La. R.S. 14:30.1;

Count 7: armed robbery with a firearm of Jose Galeas on December 11, 2015, in violation of La. R.S. 14:64.3;

Count 8: illegal discharge of a firearm while committing an armed robbery on December 11, 2015, in violation of La. R.S. 14:94 F; and

Count 10: illegal discharge of a firearm on December 9, 2015, in violation of La. R.S. 14:94 A and B.

Defendant pled not guilty to the superseding indictment.

On October 3, 2016, the State filed a notice pursuant to La. C.E. art. 404 B seeking to introduce "other crimes evidence" pertaining to (1) an alleged illegal discharge of a firearm on December 7, 2015, and (2) a December 22, 2015 shooting incident resulting in the death of a teenaged girl and the wounding of defendant.

Defendant filed an objection. On January 23, 2017, the trial court ruled that the December 7, 2015 illegal discharge of a weapon incident was inadmissible, but the December 22, 2015 shooting incident was admissible. A hearing was also held on June 12, 2017, on defendant's motion to suppress identification, which was denied by the trial court.

On September 5, 2017, a twelve-person jury trial commenced against defendant and co-defendant, Flag. On September 8, 2017, the jury found defendant guilty as charged on all eight counts.[1]

On September 14, 2017, the trial court denied defendant's motion for new trial. After a waiver of delays, the trial court sentenced defendant to consecutive terms of imprisonment as follows:

Count 2: twenty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence;

Counts 3 and 5: twenty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence plus an additional five years at hard labor without benefit of parole, probation, or suspension of sentence to be served consecutively for a total of thirty years imprisonment on each count;

Count 6: fifty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence;

Count 7: forty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence plus an additional five years without benefit of parole, probation, or suspension of sentence for a total of fifty years imprisonment;

Count 8: ten years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; and

Count 10: two years imprisonment at hard labor.

The trial court postponed defendant's sentencing on count one, second degree murder, pending a Miller[2] hearing because defendant was seventeen years old at the time the offenses were committed.

Defendant filed a motion to reconsider sentence and a motion for appeal on his non-homicide convictions and sentences for which he was sentenced on

---

[1] Co-defendant Flag was also found guilty on all the counts for which he was tried.

[2] Miller v. Alabama, 567 U.S. 460, 479, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012).

September 14, 2017. The trial court denied defendant's motion to reconsider sentence on November 6, 2017. After a <u>Miller</u> hearing on December 3, 2018, defendant was sentenced on count one to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On December 20, 2018, the trial court granted defendant's motion for appeal on his non-homicide convictions. On January 1, 2019, defendant filed a motion to reconsider his life sentence without parole imposed on count one and a second motion for appeal with respect to his life sentence. On January 7, 2019, the trial court denied defendant's motion to reconsider life sentence and granted his second motion for appeal as to his life sentence without parole eligibility. This appeal followed.

On appeal, defendant challenges (1) the sufficiency of the evidence used to convict him of second degree murder, (2) the trial court's ruling preventing him from introducing evidence of the deceased victim's prior manslaughter conviction, (3) the alleged abuse of discretion committed by the trial court in granting the State's La. C.E. art. 404 B motion, (4) the excessiveness of his consecutive sentences, and (5) his life sentence imposed without parole eligibility.

**FACTS**

<u>*Second degree murder of Bruce Lutcher on November 23, 2015 (count 1)*</u>

On November 23, 2015, Bruce Lutcher was shot and killed outside his apartment on Ute Street in Harvey, Louisiana. Cassandra Gilds, Mr. Lutcher's girlfriend, testified that on November 23, 2015, she was living with Mr. Lutcher along with their infant son and her four other children. At about 9:40 P.M. that night, Mr. Lutcher received a phone call and left the apartment. Ms. Gilds testified she was aware that Mr. Lutcher sold drugs and that it was not unusual for him to be gone for a few minutes at a time. On that particular night, she became concerned when Mr. Lutcher did not return. She called his cell phone, but Mr. Lutcher did not answer. She then had her friend, Shantrell Johnson, call Mr. Lutcher, and again, he

did not answer. Mr. Lutcher eventually returned Ms. Johnson's phone call and left a voicemail recording when she did not answer.

Ms. Gilds further testified she heard the doorbell to her apartment ring twice. She thought it was odd that Mr. Lutcher would ring the doorbell because he had a key, so she went to the door and listened. She heard a voice she did not recognize and then heard Mr. Lutcher state, "[n]o, come on, son, no. No, bra." Thereafter, she heard multiple gunshots followed by a "scratching noise." Afraid the perpetrators were going to come after her and her children, Ms. Gilds remained inside the apartment and called 9-1-1. While waiting for the police, Ms. Gilds testified she opened the apartment door and saw Mr. Lutcher at the bottom of the stairwell on his knees with his head against the wall. Mr. Lutcher was unresponsive, and his wallet and cell phone were missing.

At trial, Dr. Dana Troxclair, an expert forensic pathologist, testified that Mr. Lutcher died from multiple gunshot wounds, some of which were sustained while Mr. Lutcher had his hands up in a defensive position. Dr. Troxclair testified that Mr. Lutcher was shot thirteen times. She stated that a copper-jacketed projectile was recovered from Mr. Lutcher's mid-back during the autopsy.

Detective Rhonda Goff of the Jefferson Parish Sheriff's Office, the lead investigator in the shooting, testified that she supervised the collection of evidence and the taking of photographs at the scene. She testified it was common knowledge that Mr. Lutcher sold marijuana and that a large amount of marijuana had been found near the scene. No firearms were recovered in the homicide investigation; however, ballistics material including projectiles and casings were recovered at the scene.

Detective Goff observed that Mr. Lutcher's pockets[3] had been turned inside out and there was a bottle of Visine and the victim's keys on the ground, leading her

---

[3] David Cox with the Jefferson Parish Sheriff's Office DNA laboratory, an expert in the field of forensic DNA analysis, testified that both defendant and co-defendant Flag were excluded as contributors to the DNA mixtures found on the cutting taken from Mr. Lutcher's pockets.

to believe that Mr. Lutcher had been the victim of a robbery. Mr. Lutcher's wallet and cell phone were never recovered. After listening to the voicemail recording retrieved from Ms. Johnson's phone at 11:24 P.M. (the time of the shooting), she concluded that Mr. Lutcher's cell phone was taken during the robbery. On the voicemail recording, she was able to discern the voices of three individuals, leading her to believe that there was a minimum of two suspects, and she heard the footsteps of the perpetrators as they fled.[4]

Marcques Joseph[5] testified that he knew Mr. Lutcher from the neighborhood and that on the night Mr. Lutcher was murdered, he observed defendant and co-defendant Flag walking up the street with guns in their hands towards Mr. Lutcher. Mr. Joseph went inside and a few minutes later, he came back outside and saw that the police were at Mr. Lutcher's apartment building. Mr. Joseph picked both defendant and co-defendant Flag out of a photographic lineup.

Mr. Joseph also testified that sometime after the shooting of Mr. Lutcher, he had a conversation with defendant and co-defendant Flag, who were both talking about the murder stating, "that was my work." Initially, Mr. Joseph testified that defendant told him about the murder being "his work;" however, after he was reminded of his statement to Detective Goff, he insisted it was co-defendant Flag who said it was "his work" and defendant was present.

### December 9, 2015 Drive-By Shooting Incident at Julie Street involving the same firearm as the one used to murder Mr. Lutcher (count 10)

On December 9, 2015, a drive-by-shooting occurred on Julie Street in Marrero, Louisiana. Deputy Ryan Singleton of the Jefferson Parish Sheriff's Office arrived at the scene and collected evidence, including six casings. Deputy Singleton testified that one of the casings was a Winchester .380 auto-caliber casing, and the

---

[4] The term "ratchet" was referenced by one of the suspects on the voicemail recording, which Detective Goff was told by co-defendant Flag meant a "gun."

[5] Mr. Joseph is the cousin of Sharamie Joseph, a murder victim hit by a stray bullet intended for defendant during the December 22, 2015 shooting incident in which defendant was also wounded.

remainder of the casings were fired from a 9 mm firearm. It was later discovered that the 9 mm casings from the drive-by shooting and the murder of Mr. Lutcher were fired from the same gun.

Once Detective Goff was informed of the connection to Mr. Lutcher's murder, she spoke to Curvin Nash, one of the individuals present at the scene of the drive-by shooting, and who was incarcerated on unrelated charges at the time. She testified that Mr. Nash identified defendant and co-defendant Flag from photographic lineups as the two individuals who shot at him during the drive-by shooting, which was confirmed by Mr. Nash's statement. Detective Goff testified that she did not make any deals with Mr. Nash in exchange for his cooperation, and that at the time she spoke with him, he was trying to cooperate with the Narcotics Division to "work off his charges." Detective Goff stated that she did not tell Mr. Nash who to identify in the lineups.

However, Mr. Nash recanted his prior statement during trial claiming that Detective Goff picked out the men for him, bribed him, and informed him that he would get out of jail if he selected their photographs. Mr. Nash testified that he could not identify the individuals who shot at him because he was unable to see inside the vehicle. He further testified that he was "working off his charges" at the time he made the identifications.

### December 22, 2015 shooting, where defendant was wounded and a stray bullet killed a fifteen-year old teenager (admitted under La. C.E. art. 404 B)

Romalis Levier was also present on the scene of the December 9, 2015 drive-by shooting involving Mr. Nash (count ten discussed above). Thirteen days later on December 22, 2015, Mr. Levier went to the apartment complex where co-defendant Flag was staying with Walter Wilson and where defendant was known to regularly visit, and shot defendant in the stomach. Fifteen-year old Sharamie Joseph was

visiting with family in the apartment next door and was shot and killed by a stray bullet intended for defendant.

Detective Goff testified that after defendant was shot, he went back to his home where an ambulance was called.[6]  His home was searched, but no guns were found.  Detective Goff testified that if defendant had departed the scene of the shooting in possession of a firearm, he would have had sufficient opportunity to dispose of the weapon between the time he was shot and his arrival at home.  Detective Goff also testified that she was unable to interview Mr. Levier regarding the December 9, 2015 drive-by shooting because he was in custody for the shooting that resulted in the death of Ms. Joseph and had an attorney.

Mr. Marcques Joseph testified that he was with his cousin, Sharamie Joseph, when Mr. Levier shot and killed her during a shootout with defendant.  After his cousin was shot, he went outside and saw defendant running through the parking lot holding his stomach and observed Mr. Levier's car speeding away from the scene.

### *December 11, 2015 attempted armed robbery of Franklin Diaz (count 3)*

On December 11, 2015, two days after the December 9, 2015 drive-by shooting involving defendant and co-defendant, at approximately 5:30 P.M., Franklin Diaz was in the parking lot outside of his apartment talking on his cell phone and smoking a cigarette when two black men approached him.  At trial, Mr. Diaz testified through a Spanish-speaking interpreter that the taller of the two men pulled out a gun and demanded his money while the shorter one stood behind the other acting as a lookout.  Mr. Diaz refused to comply with their demand and ran away.  While running, the tall man with the gun shot at him.

Mr. Diaz testified he called the police and was subsequently shown two photographic lineups and identified defendant as the lookout and co-defendant Flag

---

[6] The State and defense stipulated that if defendant's father were to testify, he would state that on the night of December 22, 2015, his son came into their house with a gunshot wound and told him he had been shot by Mr. Levier.

as the individual with the gun.  Mr. Diaz identified both defendant and co-defendant Flag in open court as the perpetrators.

### December 11, 2015 attempted armed robbery and attempted second degree murder of Fausto Alvarez (counts 5 and 6)

On December 11, 2015, Fausto Alvarez drove to an apartment complex in Terrytown to pick up a friend.  At trial, Mr. Alvarez, through a Spanish-speaking interpreter, testified that he got out of his car and went to his brother's car to retrieve his toolbox.  He was approached by two black men who told him it was a "hold-up."  The shorter of the two men pointed a gun at Mr. Alvarez while the taller man reached into his pockets.  After the search turned up empty, the taller man hit Mr. Alvarez in the neck and the shorter man shot Mr. Alvarez in the stomach before fleeing.

Mr. Alvarez testified he was taken to the hospital where he remained for nineteen days.  He testified that as a result of being shot, he is confined to a wheelchair and will never walk again.  He was unable to identify his assailants from the photographs presented to him by the police.  Mr. Alvarez, however, made an in-court identification of co-defendant Flag as the man who searched and hit him based on seeing him in person in the courtroom.  He further stated that co-defendant Flag looked different than he did at the time of the attempted armed robbery because his hair at the time of the trial was short.

### December 11, 2015 armed robbery of Jose Galeas and illegal discharge of a firearm while committing a crime of violence (counts 7 and 8)

On December 11, 2015, Jose Galeas was robbed at gunpoint by two black men when he returned home from work to his apartment on Abbey Road.  Mr. Galeas testified through a Spanish-speaking interpreter that he first observed the men as they drove into the parking lot of his apartment complex.  As he was opening his apartment door, the two men, one short and one tall, told him not to move.  The shorter man pointed a gun at his head while the taller man with "braids" searched him and took his wallet containing $430.00.  He further testified that the taller man

had on a black jacket. After his assailants left, he attempted to write down the license plate number, but the assailants were watching. The shorter man told him not to look at them and fired four shots at him.

Mr. Galeas testified that a few weeks after the armed robbery, he was shown photographic lineups from which he was able to identify co-defendant Flag as the taller of the assailants.

### *Investigation of the December 11, 2015 armed robbery and attempted armed robberies*

At trial, Sergeant Wayne Rumore of the Jefferson Parish Sheriff's Office testified he responded to an armed robbery and a series of attempted armed robberies on December 11, 2015. The first incident, the attempted armed robbery of Mr. Diaz, occurred at 961 East Monterey Court in Gretna at approximately 5:30-5:40 P.M. Upon arrival at the first scene, Sergeant Rumore met with Mr. Diaz who described the first assailant as a black male, 5'10" to 6'0" tall, thin build, dreadlock hair style, wearing a white shirt and black pants, and in possession of a black semi-automatic pistol. Mr. Diaz described the second assailant as a younger, shorter black male, thin build, with short hair. Sergeant Rumore testified that there were two 9 mm casings found at the scene.

While at the scene, Sergeant Rumore testified he received a phone call around 6:00 P.M. regarding a second attempted armed robbery and shooting at Faith Place and he sent Sergeant Joseph Waguespack to that scene. After arriving at Faith Place, Sergeant Waguespack assisted Detective Daniel Lincoln in the recovery of evidence, including six 9 mm casings. It was subsequently determined that the 9 mm casings came from a single weapon. Sergeant Waguespack was unable to speak to the victim, Mr. Alvarez, because he was in surgery.

Sergeant Rumore testified he received another phone call a short time later, around 6:20-6:30 P.M., regarding a third armed robbery incident on Abbey Road,

approximately three or four miles away. Sergeant Rumore left the Monterey Court scene and proceeded to Abbey Road where four 9 mm casings were recovered. He testified that the victim, Mr. Galeas, informed him that the perpetrators were black males, one short and one tall, and that the shorter black male was in possession of a semi-automatic handgun. Mr. Galeas further informed Sergeant Rumore that the taller male was wearing a black shirt and had a "twist" hairstyle.

Sergeant Rumore testified he believed the three incidents were related because they each involved two black perpetrators, one short and one tall, and Hispanic victims. Sergeant Waguespack identified a map containing the locations of the three crime scenes and noted the three locations were only two or three miles apart and could be reached fairly quickly from the main roads.

Sergeant Waguespack testified that defendant was developed as a suspect in the armed robbery and attempted armed robberies after he was advised by a homicide investigator that defendant was involved in a homicide incident on December 22, 2015, where defendant was shot and a fifteen-year old girl was killed by a stray bullet. Sergeant Waguespack testified that defendant was found to be associated with a 9 mm handgun used in the December 22, 2015 shooting incident and the casings from that shooting incident matched the casings found at each of the robbery scenes and were determined to have been fired from the same weapon. He testified photographic lineups containing defendant were shown to the three victims and Mr. Diaz was the only victim who positively identified defendant as one of the perpetrators.

Sergeant Waguespack testified that co-defendant Flag was developed as a suspect based on the December 9, 2015 drive-by shooting incident involving Mr. Nash. When Sergeant Waguespack showed photographic lineups containing co-defendant Flag's photograph to the three victims, Mr. Diaz and Mr. Galeas identified co-defendant Flag as one of the perpetrators. Sergeant Waguespack testified that

another reason co-defendant Flag was developed as a suspect was his connection to a December 7, 2015 shooting incident at the RaceTrac on Manhattan. While no suspects were identified in that shooting incident, co-defendant Flag was field-interviewed during the investigation due to his close proximity to the scene.[7] Ballistics casings recovered from the scene of the RaceTrac shooting matched those casings recovered from the scenes of the other robberies on December 11, 2015.

## *Ballistics Evidence*

Jene Rauch of the Jefferson Parish Crime Laboratory testified as an expert in firearms and toolmark examination, shooting incident reconstruction, and crime scene investigation. Ms. Rauch analyzed materials collected from the November 23, 2015 homicide of Mr. Lutcher, the December 7, 2015 shooting at the RaceTrac, the December 9, 2015 drive-by shooting involving Mr. Nash, the December 11, 2015 armed robbery and attempted armed robberies, and the December 22, 2015 shooting incident, in which Ms. Joseph was killed by a stray bullet and defendant was shot in the stomach.

Based on her analysis of the ballistics material, Ms. Rauch testified that the 9 mm casings recovered from the homicide of Mr. Lutcher were fired from the same 9 mm handgun as the five casings found at the scene of the December 9, 2015 drive-by-shooting involving Mr. Nash. Ms. Rauch further testified the ballistics material recovered from the December 7, 2015 RaceTrac shooting and the December 11, 2015 robberies were all fired from the same 9 mm handgun that fired the ballistics material recovered from the December 22, 2015 shooting incident in which defendant was wounded.

Ms. Rauch also testified that she performed a crime scene reconstruction of the December 22, 2015 shooting. She testified the victim, Ms. Joseph, was shot by

---

[7] Although evidence concerning the December 7, 2015 incident at RaceTrac was previously found to be inadmissible under La. C.E. art. 404 B, the trial court permitted the State to question Sergeant Waguespack concerning the incident on the basis that defense counsel "opened the door to it."

a stray bullet fired by someone using a .22 caliber weapon from the street. She further testified the ballistics material was consistent with a second mobile shooter firing .38 caliber class ammunition, which would be 9 mm, toward the street from inside the stairwell of the apartment. In total, twenty-two casings were found inside the stairwell and on the sidewalk which were linked back to having been fired from the same weapon as that used in the armed robbery and attempted armed robberies on December 11, 2015.

**DISCUSSION**

In his first assignment of error, defendant contends the evidence is insufficient to convict him of the second degree murder of Mr. Lutcher. Defendant argues that he was not credibly identified as having been at the scene of the crime and that his DNA was excluded as having been on the scene. He maintains the circumstantial evidence, *i.e.*, the 9 mm casings recovered from the scene of the murder and linked to other crime scenes and his co-defendant, is insufficient to prove he was at the scene of the shooting. Defendant avers that while the ballistics evidence from the murder of Mr. Lutcher matched casings found at the scene of the December 9, 2015 drive-by shooting involving Mr. Nash, Mr. Nash recanted his statement accusing defendant and co-defendant Flag and testified at trial he did not see who shot at him.

The standard of review for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to

the prosecution. State v. Flores, 10-651 (La. App. 5 Cir. 05/24/11), 66 So.3d 1118, 1122.

In this assignment of error, defendant only challenges his second degree murder conviction. La. R.S. 14:30.1 defines second degree murder as the killing of a human being when the offender: 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though the offender has no intent to kill or to inflict great bodily harm. See State v. Lewis, 05-170 (La. App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90, writ denied, 06-757 (La. 12/15/06), 944 So.2d 1277.

Defendant does not contest on appeal that the State failed to prove any of the essential statutory elements of the crimes for which he was convicted. Rather, defendant contends there is insufficient evidence to support his second degree murder conviction based upon the alleged weak circumstantial evidence in this case linking him to the murder.[8]

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Ray, 12-684 (La. App. 5 Cir. 04/10/13), 115 So.3d 17, 20, writ denied, 13-1115 (La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Caffrey, 08-717 (La. App. 5 Cir. 05/12/09), 15 So.3d 198, 203, writ denied, 09-1305 (La. 02/05/10), 27 So.3d 297. A reviewing court may impinge on the fact-finder's discretion only to the extent

---

[8] Because defendant does not raise any arguments relating to the sufficiency of the evidence as to the statutory elements, we need not address the evidence as it relates to each essential element. See State v. Nelson, 14-252 (La. App. 5 Cir. 03/11/15), 169 So.3d 493, 500, writ denied, 15-0685 (La. 02/26/16), 187 So.3d 468. Nevertheless, a review of the record under State v. Raymo, 419 So.2d 858, 861 (La. 1982), reflects the State presented sufficient evidence under the Jackson standard to establish the essential statutory elements of second degree murder under either theory, specific intent or felony murder.

19-KA-62        13

necessary to guarantee the fundamental due process of law. <u>State v. Harris</u>, 02-1589 (La. 05/20/03), 846 So.2d 709, 713 (citing <u>State v. Mussall</u>, 523 So.2d 1305, 1310 (La. 1988)).

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. <u>State v. Williams</u>, 05-59 (La. App. 5 Cir. 05/31/05), 904 So.2d 830, 833. Where circumstantial evidence forms the basis of a conviction, the circumstances must be so clearly proven that they point not merely to the possibility or probability of guilt, but to the moral certainty of guilt. <u>State v. Shapiro</u>, 431 So.2d 372, 385 (La. 1982). The rule as to circumstantial evidence is "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This is not a separate test from the <u>Jackson</u> standard, but rather provides a helpful basis for determining the existence of reasonable doubt. <u>State v. Wooten</u>, 99-181 (La. App. 5 Cir. 06/01/99), 738 So.2d 672, 675, <u>writ denied</u>, 99-2057 (La. 01/14/00), 753 So.2d 208. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. <u>Id.</u>

To preserve the role of the trier of fact, *i.e.*, to accord the deference demanded by <u>Jackson</u>, the Louisiana Supreme Court has further subscribed to the general principle in cases involving circumstantial evidence that when the trier of fact at trial reasonably rejects the hypothesis of innocence advanced by the defendant, "that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." <u>State v. Captville</u>, 448 So.2d 676, 680 (La. 1984). A reasonable alternative hypothesis of innocence is not one "which could explain the events in an exculpatory fashion" but one that "is sufficiently reasonable that a

rational juror could not 'have found proof of guilt beyond a reasonable doubt.'" Id. (quoting Jackson, supra).

It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 03-384 (La. App. 5 Cir. 09/16/03), 858 So.2d 80, 84, writs denied, 03-2745 (La. 02/13/04), 867 So.2d 688 and 08-1951 (La. 01/30/09), 999 So.2d 750.

The eyewitness identification by Mr. Joseph of defendant and co-defendant Flag walking towards Mr. Lutcher while armed on the night of the murder, combined with the evidence that both defendant and co-defendant were identified as perpetrators in a series of attempted armed robberies and an armed robbery committed a short time after Mr. Lutcher's murder, as well as ballistics evidence recovered at the scene of the murder found to be connected to defendant based on a prior drive-by-shooting incident, is sufficient to sustain defendant's second degree murder conviction. We therefore find the evidence, viewed in a light most favorable to the prosecution, was sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant either shot and killed Mr. Lutcher or was a principal to Mr. Lutcher's murder. Further, we find that the elements of the crime proven in whole or in part by circumstantial evidence were proven sufficiently to allow the jury to reasonably conclude any reasonable hypothesis of innocence had been excluded. Accordingly, this argument is without merit.

In his second assignment of error, defendant argues his right to present a defense was infringed when the trial court prohibited him from introducing evidence of Mr. Lutcher's prior manslaughter conviction. He claims that given the circumstantial evidence in this case, the fact that the police may have had other

suspects (*i.e.*, someone seeking revenge on Mr. Lutcher based on his manslaughter conviction) was "relevant to allowing the jury to hear both sides."

Prior to the start of trial, the trial court heard arguments on the State's motion *in limine* to preclude introduction of the deceased victim Mr. Lutcher's prior manslaughter conviction. The State argued that the victim pled guilty to manslaughter in December of 2003 and that his prior conviction was unrelated to his murder in this case which occurred over a decade after his manslaughter conviction. The State contended the evidence indicated the motive for the victim's murder was robbery and not revenge. The State claimed that defendant did not make the requisite showing under La. C.E. art. 404 for the admissibility of the victim's prior conviction and defendant did not argue self-defense, thus rendering the victim's prior manslaughter conviction irrelevant. Defense counsel argued that it did not intend to refer to the victim's manslaughter conviction if the facts presented by the State at trial established the murder was a result of an armed robbery and not as a result of revenge between the victim and the accused. Co-defendant Flag's counsel argued she intended to discuss Mr. Lutcher's manslaughter conviction as part of their defense to establish that the victim had enemies. Defendant's counsel also argued that the investigating officer inquired into the victim's past when determining possible suspects, and thus, defendant should be able to question the officer. The trial court held the matter open until the start of trial.

On September 6, 2017, the trial court again heard argument of counsel on the State's motion *in limine* to exclude Mr. Lutcher's manslaughter conviction. Defense counsel argued that he was not seeking to introduce evidence of the victim's character but rather attempting to show the victim had a lot of enemies who may have wished him harm. The trial court granted the State's motion *in limine*, finding that the defense had failed to show an overt act was made on the part of the victim

at the time of the offense, and also found that the defense was attempting to use this evidence to tarnish the victim's character.

Both the Sixth Amendment of the United States Constitution and Article I, §16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. State v. Lirette, 11-1167 (La. App. 5 Cir. 06/28/12), 102 So.3d 801, 813, writ denied, 12-1694 (La. 02/22/13), 108 So.3d 763. This right does not require a trial court to permit the introduction of evidence that is inadmissible, irrelevant, or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. Id.; See La. C.E. arts. 401, 402 and 403. The trial court is afforded great discretion in evidentiary rulings, and absent a clear abuse of that discretion, rulings regarding the relevancy and admissibility of evidence will not be disturbed on appeal. State v. Sandoval, 02-230 (La. App. 5 Cir. 02/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La. 10/03/03), 855 So.2d 308.

La. C.E. art. 404 A(2) governs admissibility of character evidence of a victim and provides, in pertinent part:

> **(2) Character of victim.** (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim *at the time of the offense charged*, evidence of his dangerous character is not admissible. * * * (Emphasis added.)

At trial, no evidence was admitted or offered to show that Mr. Lutcher made a hostile demonstration or committed an overt act against defendant at the time of the shooting incident. Nor did defendant argue self-defense. La. C.E. art. 404 A(2)(a); See State v. Hicks, 16-462 (La. App. 5 Cir. 02/08/17), 213 So.3d 458, writ denied, 17-445 (La. 11/13/17), 230 So.3d 205; State v. Brown, 46,669 (La. App. 2 Cir. 02/29/12), 86 So.3d 726, writ denied, 12-0724 (La. 09/14/12), 97 So.3d 1016; State v. Keating, 00-51 (La. App. 5 Cir. 10/18/00), 772 So.2d 740, writ denied, 00-3150 (La. 10/12/01); State v. Young, 99-1054 (La. App. 5 Cir. 02/16/00), 757 So.2d

797. Thus, evidence of Mr. Lutcher's prior manslaughter conviction, which was 12 years before commission of the crimes herein, was not relevant and we find the trial court did not err in granting the State's motion *in limine*.[9] Accordingly, this argument is without merit.

In his third assignment of error, defendant argues the trial court abused its discretion in granting the State's motion to introduce evidence of other crimes pursuant to La. C.E. art. 404 B. Specifically, defendant challenges the trial court's admission of evidence relating to the December 22, 2015 shooting incident in which defendant was shot in the stomach and a stray bullet killed Ms. Joseph.

La. C.E. art. 404 B(1) provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

In order for other crimes evidence to be admitted under La. C.E. art. 404 B(1) certain requirements must be met. Pursuant to State v. Prieur, 277 So.2d 126 (La. 1973), the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. State v. Le, 13-314 (La. App. 5 Cir. 12/12/13), 131 So.3d 306, 317. The "other crimes" evidence must be admitted for other purposes, such as those listed in Article 404 B(1), having some independent relevance, or be an element of the crime charged in

---

[9] Even assuming that the trial judge erred in excluding the evidence in question, we find defendant was not prejudiced by the ruling. Although the trial court did not allow evidence of the victim's manslaughter conviction, the jury heard testimony that Mr. Lutcher was a drug dealer and that a large amount of marijuana was found near the scene. Young, 757 So.2d at 801. We also find any error in excluding the evidence was harmless. Based on the evidence, the verdict "was surely unattributable to the error." State v. Paul, 15-501 (La. App. 5 Cir. 01/27/16), 185 So.3d 188, 205.

order for the evidence to be admissible. See State v. Jackson, 625 So.2d 146, 149 (La. 1993). Further, the State must prove that the defendant committed the other acts by a preponderance of the evidence. Huddleston v. United States, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988); State v. Hernandez, 98-448 (La. App. 5 Cir. 05/19/99), 735 So.2d 888, 898-99, writ denied, 99-1688 (La. 11/12/99), 750 So.2d 194. Finally, the probative value of the evidence must substantially outweigh its prejudicial effect. La. C.E. art. 403; State v. Page, 08-531 (La. App. 5 Cir. 11/10/09), 28 So.3d 442, 451, writ denied, 09-2684 (La. 06/04/10), 38 So.3d 299.

The burden is on the defendant to show that he was prejudiced by the admission of other crimes evidence. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404 B(1) will not be disturbed. Le, 131 So.3d at 317.

Prior to trial, the State filed a notice of intent to use evidence of other bad acts pursuant to La. C.E. art. 404 B. The State sought to introduce evidence of a December 22, 2015 shooting incident, which resulted in the death of a teenaged girl and wounding of defendant. It was the State's contention that defendant was a participant in the December 22, 2015 shooting and the same firearm was used by defendant and co-defendant Flag during the December 11, 2015 armed robbery and attempted armed robberies. Because ballistics testing revealed that the same gun was used on both dates, the State intended to introduce evidence of the December 22, 2015 shooting incident to establish "the defendants' identities as the perpetrators" of the crimes committed on December 11, 2015, "their opportunity to commit the charged offenses, the absence of any mistake or accident in their discharge of the firearms in each of the three December 11, 2015 robbery incidents, and the specific intent to kill a victim left paralyzed during one of the December 11, 2015 robbery incidents." In its motion, the State further asserted that the December

22, 2015 shooting was initiated by Mr. Levier as retaliation against defendant for the December 9, 2015 drive-by shooting incident involving Mr. Nash (count 10). According to Mr. Levier, whose .22 caliber casings were recovered in the parking lot of the scene of the shooting, defendant returned fire from the other weapon on the scene, which was the same gun used on December 11, 2015.

After a hearing, the trial court granted the State's 404 B motion as to the December 22, 2015 shooting incident, finding that because the same weapon was used in the December 11, 2015 charged offenses, it established the identities of defendant and co-defendant Flag and a "lack of mistake, lack of knowledge, system and intent." Defendant now challenges the court's ruling on two grounds.

First, defendant asserts the State failed to prove by a preponderance of the evidence that he was the person who fired one of the two weapons used during the December 22, 2015 shooting incident. We find this argument is without merit.

Based on a review of the testimony and evidence, while circumstantial in nature, the State presented sufficient evidence to prove by a preponderance of the evidence that defendant was the second mobile shooter who returned shots at Mr. Levier during the December 22, 2015 shooting incident. Evidence of the December 22, 2015 shooting was also relevant to show the progression of the investigation in this case as well as the connection of the firearm to the December 11, 2015 crimes, in which defendant was positively identified as one of the perpetrators. Thus, this evidence was admissible to prove "an integral part of the act or transaction that is the subject of the present proceeding" as provided in La. C.E. art. 404 B(1), or as stated in Jackson, to prove an element of the crime, namely, the identification of the defendant. Jackson, 625 So.2d 146, 149 (La. 1993). Accordingly, we find no merit to defendant's argument that the State failed to prove that he was one of the shooters in the December 22, 2015 shooting incident, and thus, the trial court did not err in allowing the admission of this evidence on that basis.

Second, defendant asserts that the probative value of the December 22, 2015 shooting incident was outweighed by its prejudicial effect, and therefore, the trial court erred in allowing the admission of evidence regarding this unrelated shooting at trial. We find this argument is without merit. Evidence of the December 22, 2015 shooting incident was highly probative of defendant's identity. See State v. Davis, 13-237 (La. App. 5 Cir. 10/30/13), 128 So.3d 1162, 1169-1170, writ denied, 13-2751 (La. 05/23/14), 140 So.3d 723. Further, as this Court found in co-defendant Flag's appeal, "regardless of whether or not this evidence was properly admitted, after this evidence was presented by the State, defendant was able to utilize this evidence to establish a motive for Mr. Joseph's damaging testimony in this case regarding the murder of Mr. Lutcher." State v. Flag, 19-70 (La. App. 5 Cir. 12/19/18), 262 So.3d 1018, 1033; See also State v. Fair, 15-434 (La. App. 5 Cir. 12/23/15), 182 So.3d 1238, writ denied, 16-0185 (La. 02/03/17), 215 So.3d 688. Therefore, we find the trial court did not abuse its discretion in allowing the admission of the December 22, 2015 shooting incident. Accordingly, this argument is without merit.

In his fourth assignment of error, defendant argues his life sentence without the possibility of parole is unconstitutional under Miller v. Alabama,[10] claiming the trial court: 1) failed to consider how children are different, and 2) impermissibly focused its sentence on one of his non-homicide offenses. Defendant also contends that Miller sentencing cases are similar to capital sentencing cases which contemplate an exhaustive sentencing hearing. He further asserts that (1) the trial court's reasons for sentence improperly relied on his crimes alone and considered his juvenile history, young age, and violent home life as aggravating circumstances; (2) the trial court failed to consider certain mitigating factors such as his ability to

---

[10] 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

satisfy the terms of his prior probation and complete tasks while under supervision; (3) the trial court misinterpreted the law in evaluating the testimony of defendant's expert witness, Dr. Loretta Sonnier; and (4) the trial court's conclusion that he is one of the worst offenders and that he has no prospective for rehabilitation is not supported by the record.

On October 30, 2017, the State filed a notice of intent to seek a life sentence without parole eligibility and requested a <u>Miller</u> sentencing hearing given defendant's age of seventeen at the time of the second degree murder offense. On October 3, 2018, a <u>Miller</u> hearing was conducted. The defense called Dr. Sonnier as an expert in the field of forensic psychiatry with a child psychiatry background, who testified she authored a report after meeting with defendant and reviewing the <u>Miller</u> factors. Dr. Sonnier testified there was an older male co-defendant present at the time of the offenses and discussed how the presence of an older peer may have an influence on one's judgment. Based on defendant's history, Dr. Sonnier testified that defendant's caretakers were not present and his role models were engaged in criminal activity which normalized such behavior. She could not say to a reasonable degree of accuracy whether defendant is or is not one of the "rare juveniles whose crimes reflect irreparable corruption."

With respect to the <u>Miller</u> factors, Dr. Sonnier testified there were many factors present with respect to the influences on defendant's decision-making ability at the time of his arrest and that there was incomplete information concerning his dependency factor and his rehabilitation factor. Dr. Sonnier also testified that with respect to defendant's rehabilitative efforts, defendant had been going to the library to work on his case, reading books, had not had any disciplinary problems, and was looking forward to getting off "detainer" so he could attend trade classes and receive anger management treatment. Dr. Sonnier learned that defendant had been placed on probation in the past and completed a youth challenge program successfully as a

condition of his probation. However, she acknowledged that defendant failed many of his drug screenings while on probation and committed the instant murder six weeks after completion of his probation. Dr. Sonnier admitted that she had not reviewed any of the trial transcripts in this case and conceded that it would be useful to know whether defendant was remorseful and understood the enormity of his conduct. She conceded, however, that she did not discuss those issues with defendant because his responses appeared "guarded."

The trial court held the matter open to allow the State an opportunity to present evidence. A second Miller hearing was held on December 3, 2018, at which time the State introduced into evidence the entirety of the court's record, including all testimony taken during pretrial hearings and during the trial of this matter. The State argued the evidence proved that defendant could not be rehabilitated. After considering the arguments and evidence submitted, the trial court denied parole eligibility with extensive reasons.

On January 1, 2019, defendant filed a motion to reconsider sentence, arguing that his life sentence without parole was unconstitutional because he was not the "rare juvenile offender whose crime reflects irreparable corruption." He further argued the evidence presented at the sentencing hearing was inadequate to support a finding that defendant was permanently incorrigible. Defendant maintained the trial court improperly focused on the nature of the crime when sentencing defendant and that defendant was not among the "worst possible offenders" as he did not possess the intent to kill. He asserted that he was convicted as a principal to the murder of Mr. Lutcher, was influenced by his older co-defendant, and was raised by a mother who condoned criminal activity. Finally, defendant argued that a sentence of life without parole for second degree murder by a juvenile was cruel and unusual and further violated the Equal Protection Clauses of the United States and Louisiana Constitutions.

Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive and cruel punishment. State v. Lawson, 04-334 (La. App. 5 Cir. 09/28/04), 885 So.2d 618, 622, writ denied, 05-0244 (La. 12/09/05), 916 So.2d 1048. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the seriousness of the offense or imposes needless and purposeless pain and suffering. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice. State v. Payne, 10-46 (La. App. 5 Cir. 01/25/11), 59 So.3d 1287, 1294, writ denied, 11-0387 (La. 09/16/11), 69 So.3d 1141. The court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Berry, 08-151 (La. App. 5 Cir. 06/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La. 04/03/09), 6 So.3d 767.

A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Smith, 01-2574 (La. 01/14/03), 839 So.2d 1, 4. On review, the relevant question is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion. State v. Brown, 04-230 (La. App. 5 Cir. 07/27/04), 880 So.2d 899, 902 (citing Smith, supra). In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Id. There is no requirement that specific matters be given any particular weight at sentencing. State v. Smith, 12-580 (La. App. 5 Cir. 12/27/12), 106 So.3d 1265, 1270, writ denied, 13-0333 (La. 09/13/13), 120 So.3d 280. A trial court should consider the defendant's personal history such as age, family ties, marital status, health, employment record, as well as his prior

criminal record, seriousness of offense and the likelihood of rehabilitation in determining an appropriate sentence. State v. Pettus, 10-777 (La. App. 5 Cir. 05/24/11), 68 So.3d 28, 30, writ denied, 11-1326 (La. 12/02/11), 76 So.3d 1176. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore is given broad discretion in sentencing. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7, 16.

For those offenders convicted of second degree murder in Louisiana, La. R.S. 14:30.1 mandates a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. However, the United States Supreme Court in Miller held that a State's sentencing scheme that mandates life imprisonment without parole for those offenders under the age of eighteen at the time they committed a homicide offense, violates the Eighth Amendment prohibition against cruel and unusual punishment.[11] State v. Stewart, 13-639 (La. App. 5 Cir. 01/31/14), 134 So.3d 636, 639, writ denied, 14-0420 (La. 09/26/14), 149 So.3d 260. The Miller court did not establish a categorical prohibition against life imprisonment without parole for juveniles, but rather required that a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest penalty for juveniles who have committed a homicide offense. State v. Williams, 12-1766 (La. 03/08/13), 108 So.3d 1169; See also State v. Fletcher, 49,303 (La. App. 2 Cir. 10/01/14), 149 So.3d 934, 943, writ denied, 14-2205 (La. 06/05/15), 171 So.3d 945, cert. denied, --U.S.--, 136 S.Ct. 254, 193 L.Ed.2d 189 (2015).

As a result of Miller, the Louisiana legislature enacted La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4 E, both of which provide procedural guidelines for parole eligibility regarding offenders who commit first or second degree murder when they

---

[11] In Montgomery v. Louisiana, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the United States Supreme Court held that Miller was retroactive.

were under eighteen years of age. Neither Louisiana jurisprudence nor Louisiana statutory law requires the trial judge to list every aggravating or mitigating circumstance considered as long as the record reflects that the trial judge adequately considered the guidelines of La. C.Cr.P. art. 894.1. State v. Moore, 37,935 (La. App. 2 Cir. 01/28/04), 865 So.2d 227, 234, writ denied, 04-507 (La. 07/02/04), 877 So.2d 142. See also State v. Baker, 14-0222 (La. App. 1 Cir. 09/19/14), 154 So.3d 561, 566, writ denied, 14-2132 (La. 05/15/15), 170 So.3d 159; State v. Brooks, 49,033 (La. App. 2 Cir. 05/07/14), 139 So.3d 571, 576, writ denied, 14-1194 (La. 02/13/15), 159 So.3d 459.

In State v. Montgomery, 13-1163 (La. 06/28/16), 194 So.3d 606, the Louisiana Supreme Court, on remand from the United States Supreme Court, found that the factors listed in La. C.Cr.P. art. 878.1 B are not exhaustive and suggested that the trial courts consider other factors they may deem relevant when making their determination as to parole eligibility.

The record shows that the trial court considered all of the aggravating and mitigating factors when sentencing defendant to life imprisonment without the possibility of parole.[12] The trial court considered defendant's youth at the time of the offenses and considered the testimony from defendant's expert, Dr. Sonnier. As evidenced by the trial court's extensive reasons, the trial court clearly considered all mitigating circumstances, including the fact that defendant acted in concert with a twenty-four-year-old co-defendant and the influence that an older peer may have on a younger counterpart. Based on the facts of the case and the violence and brutality of the crimes committed, the trial court believed denial of parole eligibility was warranted. The trial court took cognizance of the crime spree committed by defendant over the span of a few weeks where the lives of the people he committed

---

[12] Where there is a mandatory sentence, there is no need for the trial court to justify, under La. C.Cr.P. art. 894.1, a sentence it is legally required to impose. See State v. Davis, 07-544 (La. App. 5 Cir. 12/27/07), 975 So.2d 60, 71, writ denied, 08-0380 (La. 09/19/08), 992 So.2d 952.

crimes against were put in jeopardy, noting that defendant was "responsible for a terrifying wave of crimes directed toward the Hispanic community which resulted in murder, armed robbery, conspiracy to commit those crimes, the death of Bruce Lutcher and the lifetime injury of paralysis to Fausto Alvarez." La. C.Cr.P. art. 878.1 C permits consideration of aggravating and mitigating evidence that is relevant to the charged offense or the character of the victim as well as the criminal history of an offender. The trial court correctly considered all crimes committed by defendant including the attempted armed robbery and attempted murder of Fausto Alvarez, who is now permanently confined to a wheelchair due to the shooting committed by defendant.

The trial court stated that despite being afforded opportunities for rehabilitation, defendant continued to commit acts of violence, including the murder of Mr. Lutcher, which occurred "sixty days"[13] after completion of defendant's probation. The trial court considered Dr. Sonnier's opinion regarding defendant's potential for rehabilitation and the evidence presented, and concluded defendant was not willing or able to understand the concept of probation and what it means. The trial court found defendant to be "one of the worst offenders of the court that I have seen in forty-six years of criminal law practice, that this case is one of the worst cases likewise I have ever seen."[14]

Defendant has failed to rebut the presumption of the constitutionality of his sentence. The trial court complied with the principles set forth in Miller and adequately considered the factors set forth in Article 894.1 prior to imposing

---

[13] We note that the trial court stated that the murder of Mr. Lutcher occurred "60 days" after completion of defendant's probation, but this does not appear to be an accurate statement. Dr. Sonnier testified that the murder of Mr. Lutcher occurred "six weeks" after defendant completed his probation. Additionally, the defendant's juvenile record shows that an order terminating defendant's probation was signed on October 21, 2015 and Mr. Lutcher was murdered on November 23, 2015 per the indictment.

[14] Life sentences without parole eligibility have previously been imposed in comparable cases. See State v. Smoot, 13-453 (La. App. 5 Cir. 01/15/14), 134 So.3d 1, writ denied, 14-0297 (La. 09/12/14), 147 So.3d 704; State v. Brooks, 49,033 (La. App. 2 Cir. 05/07/14), 139 So.3d 571, writ denied, 14-1194 (La. 02/13/15), 159 So.3d 459.

defendant's life sentence. See La. C.Cr.P. art. 878.1. Considering the testimony adduced at the Miller hearing, the violence and brutality of the crimes committed, defendant's complete disregard for the lives of his armed robbery/attempted armed robbery victims and murder victim, Mr. Lutcher, the trial court's careful review of the circumstances of the case and thorough reasons, and all mitigating factors including defendant's youth, we find the trial court did not abuse its broad discretion in sentencing defendant. We further find that the sentence imposed is not grossly disproportionate to the severity of the offense and therefore is not unconstitutionally excessive. Accordingly, this argument is without merit.

In his fifth assignment of error, defendant argues his counsel rendered ineffective assistance as to his sentencing for second degree murder (count one) under Miller. Defendant claims his counsel should have filed a presentencing motion on the grounds that the evidence suggested he was convicted as a principal, and as such, his culpability does not rise to the same level as the person who fired the gun. Defendant acknowledges that his trial counsel did retain an expert, but claims that under the Louisiana Public Defender Board's (LPDB) published guidelines for Miller cases, it is required that at least one of the attorneys on the defense team be specially trained to handle a Miller sentencing hearing. He maintains that such a specialized attorney would have conducted an "exhaustive mitigation investigation," and claims that the LPDB guidelines acknowledge a Miller sentencing hearing should be treated like a capital sentencing hearing.

The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution safeguard a defendant's right to effective assistance of trial counsel. A defendant asserting an ineffective assistance claim must show: 1) that defense counsel's performance was deficient; and 2) the deficiency prejudiced defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant has the burden of showing that "there is a reasonable

19-KA-62                                    28

probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Id.

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. State v. Hoppens, 13-948 (La. App. 5 Cir. 04/23/14), 140 So.3d 293, 300-01, writ denied, 14-1856 (La. 09/11/15), 176 So.3d 414. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id.

We conclude that the record contains sufficient evidence to rule on the merits of defendant's ineffective assistance of counsel claim and we therefore will address it in the interest of judicial economy. For the reasons stated herein, we find defendant's ineffective assistance of counsel claim is without merit.

First, defendant does not cite any authority which directly supports his contention that a Miller hearing should be considered the functional equivalent of a capital sentencing hearing, and neither of the findings in Miller or Montgomery hold this to be true. See Fletcher, supra.

Second, we find defendant has failed to show how his counsel's performance was deficient for failing to file any presentencing motions regarding his culpability in the murder. While his counsel did not file any presentencing motions, defendant's counsel filed an extensive motion to reconsider sentence after imposition of defendant's life sentence without parole eligibility. In his motion, counsel argued that the evidence failed to establish defendant's role in the murder and defendant should not have been sentenced to life without parole eligibility when he did not fire the weapon that killed Mr. Lutcher. The trial court denied defendant's motion finding this basis did not warrant a life sentence with parole eligibility. Defendant

failed to show how raising this argument prior to sentencing, as opposed to after, constituted deficient performance by his trial counsel or how the alleged deficiency prejudiced him.  Further, defendant provided no legal support for the assertion that a principal convicted of second degree murder bars a life sentence without parole eligibility.[15]

There is also no indication in the record, as defendant suggests, that he was prejudiced by his counsel's failure to file a presentencing motion which may have "educated" the court on the necessary legal considerations that should have been applied during sentencing, which he claims would have resulted in a sentence of life with parole eligibility.  The trial court listened to defendant's expert, Dr. Sonnier, and the legal arguments made by the parties, after which it rendered a lengthy and detailed finding in support of the imposition of defendant's life sentence without parole eligibility.  It is clear that the trial court fully understood and complied with the Miller sentencing mandates, and thus defendant has failed to show his counsel was deficient.

Finally, while defendant references the LPDB published guidelines which he maintains set forth certain public defender requirements for Miller cases, such guidelines do not exist by operation of law.  The record shows that defendant's counsel did conduct an exhaustive mitigation investigation.  Defendant's counsel retained an expert who authored an expert report and testified regarding her meetings with defendant, her opinions regarding defendant's juvenile status, the impact his age may have had on the crimes committed, and his chance at rehabilitation.  Defendant's juvenile records were also introduced into evidence by defense counsel at the Miller hearing, and lengthy arguments were made as to the mitigating

---

[15] There are no degrees of principals.  All persons aiding and abetting in the commission of a felony are "principals" and are punishable alike.  State v. Capaci, 154 So. 419, 493 (La. 1934).  See also State v. Davis, 15-118 (La. App. 5 Cir. 06/30/15), 171 So.3d 1223, writ denied, 15-1492 (La. 09/22/17), 227 So.3d 820.

evidence. There is no mandate that a juvenile defendant must have a comprehensive family interview, a prenatal history investigation, a developmental history documented, a full medical history ascertained, a history of substance abuse documented, a social history obtained, and/or a psychological evaluation completed before sentencing. State v. Allen, 17-685 (La. App. 5 Cir. 05/16/18), 247 So.3d 179, 185, writ denied, 18-1042 (La. 11/05/18), 255 So.3d 998 (citing State v. Dove, 15-0783 (La. App. 4 Cir. 05/04/16), 194 So.3d 92, 117, writ denied, 16-1081 (La. 6/29/17), 222 So.3d 48, cert. denied, --U.S.--, 138 S.Ct. 1279, 200 L.Ed.2d 475 (2018)). Additionally, defendant failed to specify what information might have been obtained from the alleged "exhaustive mitigation investigation" that he claims was not conducted; therefore, he did not show how he was prejudiced. See State v. Davis, 596 So.2d 358, 364 (La. App. 4 Cir. 1992), writ denied, 604 So.2d 965 (La. 1992).

Based on the foregoing, we find defendant has not shown any deficiency in his counsel's performance or that any alleged deficiency prejudiced him. Accordingly, this argument is without merit.

In his sixth assignment of error, defendant argues the consecutive sentences imposed on his non-homicide convictions totaling 197 years are equivalent to a life sentence without parole, and because of his juvenile status, are unconstitutional under Graham v. Florida.[16]

As previously discussed, both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive and cruel punishment. Lawson, supra. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the seriousness of the offense or imposes needless and purposeless pain and suffering. In reviewing a sentence for excessiveness, the

---

[16] Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

appellate court must consider the punishment and the crime in light of the harm to society, and gauge whether the penalty is so disproportionate as to shock the court's sense of justice. Payne, supra.

With respect to the law regarding Eighth Amendment jurisprudence defining what constitutes excessive punishment of juveniles, the United States Supreme Court in Roper v. Simmons, 543 U.S. 551, 574, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) decided the Constitution prohibits the execution of a defendant for capital murder committed as a juvenile. In Graham the United States Supreme Court announced a new categorical rule when it concluded that the "Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." Graham, 560 U.S. at 82, 130 S.Ct. at 2034. The United States Supreme Court then held in Miller that a sentencing scheme which requires life without parole for a defendant convicted of a homicide committed as a juvenile is unconstitutional.

In this case, defendant's sole argument is that his consecutive non-homicide sentences totaling 197 years are equivalent to a life sentence without parole, and because of his juvenile status, are unconstitutional under Graham.

The United States Supreme Court declined to grant certiorari in Bunch v. Smith, 685 F.3d 546 (6th Cir. 2012), cert. denied, Bunch v. Bobby, 569 U.S. 947, 133 S.Ct. 1996, 185 L.Ed.2d 865 (2013), a case in which the Sixth Circuit held that a state court's determination that a juvenile offender's consecutive, fixed-term sentences totaling 89 years for robbery, kidnapping, and rape, did not violate the Eighth Amendment's prohibition against cruel and unusual punishment, and was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court in Graham, and thus did not warrant federal habeas relief.

In Bunch, the juvenile defendant argued that his consecutive, fixed-term sentences were the functional equivalent of life without parole in violation of Graham. The Sixth Circuit found that Graham does not establish that consecutive, fixed-term sentences for juveniles who have committed multiple non-homicide offenses are unconstitutional when they amount to the practical equivalent of life without parole eligibility. The Sixth Circuit observed that the Graham court expressly stated it was only concerned with those juvenile offenders sentenced to life without parole eligibility for a single non-homicide offense and did not analyze sentencing laws regarding multiple consecutive sentences for non-homicide offenses committed by juveniles. While acknowledging the juvenile defendant's eighty-nine year sentence might be the functional equivalent of life without parole eligibility, the Sixth Circuit noted that no federal court had extended Graham's holding beyond its plain language as to a juvenile who received consecutive sentences. The Sixth Circuit held that until the United States Supreme Court has ruled that consecutive sentences which result in an aggregate sentence exceeding a juvenile offender's life expectancy are deemed to be cruel and unusual, the juvenile defendant's eighty-nine year sentence did not violate clearly established federal law.[17]

Louisiana jurisprudence interpreting Graham has held that Graham only provides parole eligibility for defendants with: (1) actual life sentences;[18] and (2) a single term-of-years sentence which, standing alone, constitutes an "effective" life sentence.[19] Therefore, if a juvenile defendant, such as defendant in this case, is

___

[17] The Sixth Circuit also mentioned Miller and found that Miller also did not warrant a different result. It found that the Miller court did not, as in Graham, address juvenile offenders who received consecutive sentences for non-homicide offenses.

[18] See State v. Brown, 12-0872 (La. 5/07/13), 118 So.3d 332 ("the Eighth Amendment's prohibition of cruel and unusual punishment forbids the imposition of life in prison without parole for juveniles omitting non-homicide crimes, applies only to sentences of life in prison without parole, and does not apply to a sentence of years without the possibility of parole"); State v. Shaffer, 11-1756 (La. 11/23/11), 77 So.3d 939 (appropriate remedy for sentences of life without parole under Graham is to delete parole eligibility restriction).

[19] Ex rel. Morgan v. State, 15-0100 (La. 10/19/16), 217 So.3d 266 (a sentence of life without the possibility of parole for a single non-homicide offense committed by a juvenile constitutes cruel and unusual punishment and violates holding in Graham).

sentenced to consecutive sentences without parole for multiple convictions, which in their aggregate exceeds a defendant's life expectancy, <u>Graham</u> is not implicated. We therefore find defendant's consecutive sentences totaling 197 years are not unconstitutionally excessive under <u>Graham</u>. Accordingly, this argument is without merit.

**ERRORS PATENT DISCUSSION**

The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; <u>State v. Oliveaux</u>, 312 So.2d 337 (La. 1975); and <u>State v. Weiland</u>, 556 So.2d 175 (La. App. 5 Cir. 1990). The following errors patent require correction.

First, the record fails to reflect that defendant was properly advised of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8. If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. See <u>State v. Perez</u>, 17-119 (La. App. 5 Cir. 08/30/17), 227 So.3d 864.

Therefore, we advise defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. art. 914 or 922.

Secondly, the September 15, 2017 Uniform Commitment Order ("UCO") does not specifically state that defendant's sentences are to be served consecutively, even though it provides for a total term of 197 years. We do note that the December 3, 2018 UCO created after the <u>Miller</u> sentencing hearing does provide for the consecutive nature of the sentences. Also, the September 15, 2017 UCO does not contain the date of the offense for count five; however, it is contained in the December 3, 2018 UCO. Additionally, both the September 14, 2017 sentencing

minute entry and September 15, 2017 UCO, as well as the December 3, 2018 sentencing minute entry and UCO, indicate that defendant's sentence on count ten (illegal use of weapons) is to be served without benefit of probation, parole, or suspension of sentence when the transcript does not, and a restriction on benefits is not provided for under the statute. See La. R.S. 14:94 A and B. Additionally, the September 15, 2017 UCO provides that defendant was convicted on count seven of "14:64.3 ARMED ROBBERY" and the UCO should state that he was convicted of "armed robbery with a firearm."

Accordingly, we remand the matter for correction of the sentencing minute entries and UCOs to accurately reflect the noted discrepancies. The Clerk of Court for the 24th Judicial District Court is directed to transmit the original of the corrected UCOs to the appropriate authorities in accordance with La. C.Cr.P. art. 892 B(2) and the Department of Corrections' legal department. See State v. Doucet, 17-200 (La. App. 5 Cir. 12/27/17), 237 So.3d 598, writs denied, 18-77 (La. 10/08/18), 253 So.3d 789 and 18-196 (La. 11/05/18), 255 So.3d 1052, cert. denied, --U.S.--, 139 S.Ct. 2676, 204 L.Ed.2d 1079 (2019).

Lastly, the September 14, 2017 sentencing minute entry indicates defendant's "conviction is designated by the court as a crime of violence"; however, the transcript does not reflect that the trial court made such a designation. Certain crimes "shall always be designated by the court in the minutes as a crime of violence." La. C.Cr.P. art. 890.3 C. Among the crimes that shall always be designated by the court in the minutes as crimes of violence are: "(3) second degree murder . . . [and] (20) armed robbery; use of a firearm; addition penalty." La. C.Cr.P. art. 890.3 C. Therefore, based on the record, some of defendant's convictions must be designated as crimes of violence in the September 14, 2017 minute entry. See State v. Holloway, 15-1233 (La. 10/19/16), 217 So.3d 343, 346 n.3. The minute entry does not reflect which convictions were designated as crimes of violence; therefore, we

remand for correction of the September 14, 2017 sentencing minute entry to designate specifically which convictions are crimes of violence.  See State v. Parnell, 17-550 (La. App. 5 Cir. 5/16/18), 247 So.3d 1116.

**DECREE**

For the reasons stated herein, defendant's convictions and sentences are affirmed.  The matter is remanded with instructions as stated herein.

<u>**CONVICTIONS  AND  SENTENCES  AFFIRMED; REMANDED WITH INSTRUCTIONS**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY <u>**APRIL 23, 2020**</u> TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-KA-62

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE WILLIAM C. CREDO, III JUDGE PRO TEMPORE (DISTRICT JUDGE)
DARREN A. ALLEMAND (APPELLEE)        TERRY M. BOUDREAUX (APPELLEE)        MEGHAN H. BITOUN (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(ATTORNEY)
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053